UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| TALLAPOOSA RENEWABLE | ) | |
| GREEN ENERGY, INC., | ) | Case No. 19-12150-WHD |
| | ) | |
| Debtor. | ) | |
| _____ | ) | _____ |
| R. RICHARD SARGENT | ) | |
| | ) | |
| MOVANT | ) | |
| | ) | CONTESTED MATTER |
| vs | ) | |
| | ) | |
| TALLAPOOSA RENEWABLE | ) | |
| GREEN ENERGY, INC., | ) | |
| | ) | |
| RESPONDENT | ) | |
| _____ | ) | |

**CREDITOR R. RICHARD SARGENT'S OBJECTION TO: (A) DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY HOWARD P. SLOMKA AND BUSCH, SLIPAKOFF, MILLS AND SLOMKA, LLC AS BANKRUPTCY COUNSEL FOR DEBTOR; AND (B) BUSCH SLIPAKOFF, MILLS AND SLOMKA, LLC'S FIRST AND FINAL APPLICATION <u>FOR COMPENSATION FOR CHAPTER 11 LEGAL FEES</u>**

COMES NOW R. Richard Sargent ("Sargent"), a secured creditor in the above styled bankruptcy case (the "Bankruptcy Case"), and by and through his undersigned counsel files his objection to: (A) Debtor's Application For Authority to Employ Howard P. Slomka and Busch, Slipakoff, Mills and Slomka, LLC as Bankruptcy Counsel For Debtor, dated November 26, 2019 (Dkt. No. 18), and (B) Busch, Slipakoff, Mills and Slomka, LLC's Application For Compensation For Chapter 11 Legal Fees Due to Debtor's Attorney, dated January 17, 2020 (Dkt. No. 60).

1

## I.  BACKGROUND

On October 30, 2019 (the "Petition Date"), Tallapoosa Renewable Green Energy, Inc. ("Debtor") commenced Case No. 19-12150-WHD (the "Bankruptcy Case") by filing a petition for relief (the "Petition") under Chapter 11 of the United States Bankruptcy Code. (Dkt. No. 1). Harris Lee Bagley, Jr. ("Bagley") signed the Petition as follows: "Lee Bagley as Power of Attorney for Lindsey Evans".

Lindsey Evans ("Evans") is the sole shareholder and director of the Debtor. Upon information and belief, Evans has been since the Petition Date, and continues to be, confined to a drug treatment facility. The Bankruptcy Case is a single asset real estate case, the Debtor having as its only asset a warehouse facility in Tallapoosa, Haralson County, Georgia.

On November 22, 2019, the UST filed its Motion to Dismiss Case or Convert to Chapter 7 (Dkt. No. 14) seeking dismissal or conversion of the Bankruptcy Case to a Chapter 7 Liquidation, which was amended by the UST's Amended Motion to Dismiss Case or Convert to Chapter 7 on December 10, 2019 (Dkt. No. 24) (as amended, the "MTD").

On November 26, 2019, Debtor filed its Application for Authority to Employ Howard P. Slomka and Bush, Slipakoff, Mills and Slomka, LLC as Bankruptcy Counsel (Dkt. No. 18) (the "Application to Employ"). On December 13, 2019, the UST filed the United States Trustee's Objection to Debtor's Application to Employ Attorney (the "UST Objection") (Dkt. No. 27) citing numerous deficiencies in Debtor's Application to Employ and prior disclosure, including Debtor's failure to comply with Bankruptcy Code Section 327 and Rule 2014.  The UST Objection also objected to Busch Slipakoff's employment on the basis that the firm is not "disinterested", as clearly established by the Application to Employ.

2

On December 17, 2019, Busch Slipakoff attempted to address the UST Objection in an amended and restated version of its Application to Employ (Dkt. No. 29). To date, the Application to Employ, as amended, and the UST Objection thereto have not been heard by this Court.

At the hearing on the UST's MTD on December 20, 2019, the Court ordered the appointment of a Chapter 11 Trustee in the Bankruptcy Case. (Dkt. No. 32). Leslie M. Pineyro was appointed as Trustee in the Bankruptcy Case by Order, dated January 7, 2020. (Dkt. No. 43).

On January 17, 2020, Busch Slipakoff filed its First and Final Application For Compensation For Chapter 11 Legal Fees to Debtor's Attorney (Dkt. No. 60) (the "Fee Application"). In the Fee Application, Busch Slipakoff seeks compensation in the amount of $18,858.42 for legal fees allegedly incurred from the Petition Date through January 7, 2020. The Fee Application has been set for hearing on February 12, 2020.

## II.     REQUIREMENT FOR APPROVAL OF EMPLOYMENT

With court approval, debtors in possession may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. Bankruptcy Code sections 1107 and 327 and Federal Rule of Bankruptcy Procedure 2014(a) govern the employment of professionals to represent or assist the debtor-in-possession in carrying out its duties under Title 11. The retention process is designed to ensure public confidence in the bankruptcy system, prevent abuses, and achieve some degree of economy in the administration of the case by limiting the retention of professionals to only those instances where it can be demonstrated that the services are necessary. Furthermore,

the requirements of section 327 "serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994). Accordingly, the Court may deny compensation to professionals whose employment was not approved by the Court. In re Southern Diversified Properties, Inc., 110 B.R. 992, 996 (Bankr. N.D. Ga. 1990). "Section 327(a) does not state an absolute deadline for obtaining approval of counsel, but waiting until after the work is complete is often fatal to a professional's application for compensation." In re W.T. Mayfield Sons Trucking Co., Inc., 225 B.R. 818, 824 (Bankr. N.D. Ga. 1998).

### III.     DISINTERESTEDNESS; DISCLOSURE OF CONNECTIONS

Bankruptcy Code section 327(a) provides:

"Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, *that do not hold or represent an interest adverse to the estate, and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title." (emphasis added)

Applications must state specific facts demonstrating the necessity for the employment, the name of the person to be employed, the reasons for the selection, the services to be rendered, any proposed arrangements for compensation, *and all of the person's connections with debtor, creditors or another party in interest*, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee. The application must be

4

accompanied by a verified statement of the person to be employed, containing these same disclosures.

Court approval of a professional person's employment is contingent upon a finding that the applicant has met a two-pronged test: (1) the professional must be disinterested, as defined in Bankruptcy Code section 101(14), and (2) the professional must not hold or represent an interest adverse to the estate. The question of whether a professional meets the standards of the law is one for the Court to adjudicate after a full disclosure of the facts. Accordingly, failure to disclose pertinent connections may constitute an independent basis for disqualification. Matter of Atlanta Sporting Club, 137 B.R. 550, 553 (Bankr. N.D. Ga. 1991).

The Eleventh Circuit Court of Appeals has held that parties are adverse to the estate "if they possess either an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or a predisposition under the circumstances that render such a bias against the estate." In re Prince 40 F.3d 356, 361 (11th Cir. 1994). In Waterfall Village, the court applied a two-prong test to determine whether counsel should be disqualified: (1) whether a "specifically identifiable impropriety" (i.e., an actual conflict of interest) occurred and, if so, (2) whether the likelihood of public suspicion (i.e., appearance of impropriety) in the judicial process outweighs the firm's interest in representing the debtor. In re Waterfall Village of Atlanta, Ltd., 103 B.R. 340, 344 (Bankr. N.D. Ga. 1989).

## IV.     ADVERSE INTERESTS

On November 14, 2019, Debtor filed Schedules to the Petition which included Debtor's Disclosure of Compensation for Attorney for Debtor and the Debtor's Statement of Financial Affairs (Dkt. No. 13).  Neither Debtor's 2016(b) Statement, nor the Statement of Financial Affairs signed under oath by Howard P. Slomka ("Slomka") on behalf of Busch Slipakoff, disclose the prepetition payment of $25,000 to Busch Slipakoff and the application of approximately fifty percent (50%) of such payment to then outstanding legal fees of Busch Slipakoff, though such disclosure was clearly required by both of Schedules.

On November 26, 2019, Busch Slipakoff filed Debtor's Application for Authority to Employ Howard P. Slomka and Bush, Slipakoff, Mills and Slomka, LLC as Bankruptcy Counsel (Dkt. No. 18) (the "Application to Employ") which first disclosed the prepetition payment to Busch Slipakoff, but notably did not disclose that the source of the funds used to pay the retainer was Bagley's company, Prestige Builders. The Application to Employ stated only that "Debtor was able to deliver a total of $25,000.00 to [Busch Slipakoff]". Further, the Rule 2014 Sworn Declaration attached to the Application to Employ signed by Mr. Slomka includes the statement that  "Neither I nor the Firm have or represent any interest adverse to the Debtor or the Debtor's estate. The Firm has no connections with the Debtor, the Debtor's creditors, any other party in interest or their respective attorneys or accountants…."

6

On December 4, 2019, the first scheduled meeting of creditors could not be held because, in the judgment of the UST, no qualified representative of the Debtor appeared to be examined. Immediately after such determination, an informational discussion was held between Robert Rampley, an employee of Bagley and Evans who had appeared to testify, Mr. Slomka, the UST and counsel for Sargent. In such discussion, the UST identified a number of the deficiencies in Busch Slipakoff's disclosures. The meeting of creditors was rescheduled for a later date.

On December 13, 2019, the UST filed the United States Trustee's Objection to Debtor's Application to Employ (the UST Objection") citing numerous deficiencies in Debtor's Application, including Debtor's failure to comply with Bankruptcy Code Section 327 and Rule 2014 and the fact that Busch Slipakoff is not "disinterested" as shown by the Debtor's Application to Employ (Dkt. No. 27).

The UST and counsel for Sargent conducted a Deposition of Bagley on December 16, 2019 (the "Bagley Deposition"). In the Bagley Deposition, Bagley testified that he personally, and/or an entity owned and controlled by him, had made loans of between $60,000 and $80,000 to Evans prior to the Petition Date (Deposition of Harris Lee Bagley, Jr., Page 78, Lines 7 through 11).

Specifically, Bagley testified as follows:

"Q  Who paid the retainer?

A  I did - - my business did, Prestige.

Q  So that did not come from B&E Holdings? That came from you or from your business?

A Yes, sir.

7

Q  So the $25,000 came from a business that you own and operate?

A  Yes.

Q  Did you believe that this was a loan or a gift?

A  A loan."

On December 17, 2019, Busch Slipakoff shamelessly sought to cure the deficiencies in the original 2016(b) Statement and to address the UST Objection by filing a First Amended and Restated Disclosure of Compensation of Attorney For Debtor (Dkt. No. 28), which includes the following statement:

> "Prestige Builders of NW GA, Inc. (PB) wired a prepetition retainer of $25,000 to Debtor's counsel. PB is not a creditor of Debtor, but rather has been supporting Debtor's owner Lindsay Evans while he is unable to work. PB is owned by H. Lee Bagley, who is the agent under the Power of Attorney signed by Evans. Bagley is not personally a party or creditor of Debtor. After payment of filing fees and prepetition bills for Debtor, counsel holds $15,576.33 in trust for Debtor's estate, paid by PB."[1]

Also on December 17, 2019, Busch Slipakoff attempted to address the UST Objection in an amended and restated version of its Application to Employ (Dkt. No. 29), which includes the incredible statement:

> "To the extent that Law Firm received a pre-petition retainer from Prestige Builders of NW GA. Inc. ("Prestige") it did so on the belief, which it still holds, that neither Prestige nor its owner H. Lee Bagley is a creditor of Debtor *or an interested party in the bankruptcy (emphasis added)*."

---

[1] A First Amended and Restated 2016 (b) Statement was refiled on December 20, 2019, apparently without substantive change. (Dkt. No. 34). A Second Amended and Restated 2016 (b) Statement was refiled on January 17, 2020, also apparently without substantive change. (Dkt. No. 59).

8

The foregoing statement was essentially repeated under oath in Mr. Slomka's amended Rule 2014 Declaration attached to the amendment in the following statement:

> "The retainer was paid by wire transfer from Prestige Builder s of NW GA, Inc., a corporation that has been lending money to Lindsey Evans, the shareholder of Debtor. I do not believe that Prestige is a creditor of the Debtor, nor do I believe that the owner of Prestige, Mr. H. Lee Bagley, is a creditor of the Debtor."

Neither the Application to Employ nor the UST Objection have been heard by this Court, nor has either been set for hearing as of this date.

Also in the Bagley Deposition, under questioning by Sargent's counsel, it came to light that Bagley had caused his entity, Prestige Builders, Inc., to make an unapproved loan to the Debtor of approximately $17,000 to pay the first installment of the Debtor's casualty insurance premium and did so without seeking approval of the Court. More egregious still is the fact that Bagley, upon Debtor unexpectedly collecting rents within "36 to 48 hours" after making such unauthorized loan, caused a portion of such rents to be used to pay the insurance company an additional $17,000 and persuading the insurance company to repay the $17,000 to Prestige Builders without Court approval, using Sargent's cash collateral to do so. Such use of cash collateral and repayment of an insider loan were blatantly in violation of Section 363 of the Code.

To make clear the actions initiated by Bagley, and apparently approved by Mr. Slomka, Bagley testified in his Deposition as follows (Deposition of Harris Lee Bagley, Jr., Page 64, Line 13 – Page 68, Line 24):

```
11      Q    My name is Nelvin (sic) Smith   I'm one of the
12    attorneys for Mr. Sargent.   If you can't hear me, by
13    all means, speak up.    To start with, I think we will
14    come back to some of these issues about the insurance
```

9

```
15   payment since it is on our minds and we've been

16   talking about it recently.    You went and caused a

17   check to be issued to the insurance company to pay the

18   down payment on the premium; is that right?

19        A    Yes, sir.

20        Q    What account was that drawn on?

21        A    Prestige Builders.

22        Q    And that check was delivered to the

23   insurance agent?

24        A    Yes, sir.

25        Q    How was it delivered?
                                                      Page 65
 1        A    It seems like he came and got it.    The agent

 2   did.

 3        Q    And that was on the date that the insurance

 4   policy was actually issued?

 5        A    Yes, sir.

 6        Q    You mentioned 24 to 36 hours later, you

 7   received rent from one of the tenants.    Which tenant

 8   was that?

 9        A    Extreme Recycling.

10        Q    In what form did you receive those funds?

11        A    A check.

12        Q    One check?

13        A    It seems like it was multiple checks and

14   some cash.
15        Q    Do you recall how much cash?
```

16         A     It seems like $8000.

17         Q     Were those funds, the cash and the checks,

18    deposited in the debtor's account at Synovus?

19         A     The new account, yes.  The trust account,

20    yes.

21         Q     And then you caused another check to be

22    issued on the Synovus debtor-in-possession account to

23    pay the premium?
24         A     Yes, sir.

25         Q     And you said it was about $17,000?

Page 66

1          A     The same amount.
2          Q     Was it closer to 24 hours or 36 hours?  That

3     is a pretty broad span.

4          A     It seems like -- I can't remember when the

5     renter came and made his payment.  He made multiple

6     payments, but it was 24 to 36 hours.

7          Q     You said multiple payments.  He made

8     payments at different times?

9          A     No.  He made multiple payments out of a

10    different checking account and cash.

11         Q     All at the same time?

12         A     Yes.

13         Q     Did he physically deliver that to your

14    office?

15         A     No, sir.

16         Q     Where did he deliver it?

11

17      A    The office on Alabama Highway.

18      Q    Whose office is that?

19      A    It is the old Soymet office.

20      Q    We will get to Soymet in a minute, but that

21  is a company owned by Mr. Evans?

22      A    Yes, sir.

23      Q    Who was present at this address?

24      A    Robert Rampley.

25      Q    So he physically delivered the checks and

Page 67

1  the cash to Mr. Rampley?
2      A    Yes, sir.

3      Q    When the initial check was printed, it went

4  directly from Prestige to the insurance company?

5      A    Yes.

6      Q    And it was picked up by the insurance agent

7  at your office?
8      A    Yes, sir.

9      Q    And then these checks came into the office

10  of Soymet. Who made the decision to write that check,

11  the second check, to the insurance company?

12      A    I did.

13      Q    Were you doing that in your capacity as an

14  officer of the debtor? The debtor is Tallapoosa

15  Renewable Green Energy. Were you doing it as an

16  individual?

17      A    I was doing it as a -- on behalf of Lindsey

18  and the debtor.

12

```
19      Q    Lindsey is not the debtor.   Was it Lindsey,
20  or was it the debtor?
21      A    When you say the debtor?
22      Q    Tallapoosa Green Energy.
23      A    Tallapoosa Green Energy.
24      Q    So you were making that decision on behalf
25  of the debtor?
```

Page 68

```
 1      A    Yes.
 2      Q    How was that second check physically
 3  delivered?  I guess I should ask if it was a check
 4  that you caused to be issued.
 5      A    Yes.
 6      Q    There was enough cash to make a down
 7  payment, wasn't there?
 8      A    The cash was deposited as well.
 9      Q    So you caused a check to be issued on the
10  trust account, the debtor-in-possession account?
11      A    Yes, sir.
12      Q    How was it physically delivered to the
13  insurance company?
14      A    I don't know if Robert dropped it off or if
15  our agent picked it up.
16      Q    How did you get your money back or
17  Prestige's money back?
18      A    The agent wrote a check back.
19      Q    On his insurance agent account?
20      A    Yes, sir.
```

```
21      Q     Did that come to you?

22      A     Yes.

23      Q     Directly to you or to the debtor?

24      A     Directly to me."
```

Clearly, Mr. Slomka has been less than candid in the initial disclosures in this Bankruptcy Case, having initially failed to disclose his receipt of a $25,000 prepetition retainer directly from an entity which was known to him to be a creditor of either the Debtor or a significant creditor of the sole shareholder and officer of the Debtor. When the prepetition retainer was disclosed, the source of the funds was not disclosed.

In addition, Mr. Slomka allowed Bagley to cause the casualty insurance company to repay to Bagley's company, Prestige Builders, a $17,000 post-petition loan made by Prestige to the Debtor without Court approval. Further, the unapproved post-petition loan was repaid from Sargent's cash collateral without seeking Court approval. Mr. Slomka was, or should have been, fully aware that the foregoing transactions initiated by Bagley were highly improper. Mr. Slomka failed to disclose them to the UST or any creditor, thereby favoring the interests of Bagley (the creditor which paid the prepetition retainer) over the interests of creditors of the estate.

The "late" disclosure (12/17/19) by the Debtor's Counsel, of the "true" source of funds within the First Amended and Restated Disclosure of Compensation of Attorney For Debtor (Dkt. No. 28) cannot effectively "un-sail the ship" that has long since left port.

The fact that the retainer fee was paid by Bagley's entity, an admitted creditor of the only principal of this Debtor, was brought out in deposition the day before (12/16/19) the docketing of the Amended Disclosure.  But the time for full disclosure is not after one's "hand is photographed within the cookie jar".

A similar fact situation, albeit payment(s) was post-petition, was not timely disclosed in the Southern District of Georgia and, like the case at bar, was discovered during deposition – and the fees were disgorged by order of the court.

> "MLF's argument that these were actually Debtor's funds because they were loan repayments does not alter the fact that MLF failed to disclose the payments were from Four Seasons' account, rather than Debtor's. The details of the transaction are missing. The source of these funds was initially discovered upon Pannill's deposition of Four Seasons' bookkeeper. Counsel's failure to properly disclose the required information may result in its disqualification, as well as the disgorgement of fees and imposition of sanctions. In re Prince, 40 F.3d 356 (11th Cir. 1994); see generally, Collier on Bankruptcy § 2014.03 (16th ed. 2015); In re Adam Furniture, Indus., Inc., 158 B.R. 291, 299 (Bankr. S.D. Ga. 1993)

In re Shelnut, 577 B.R. 605, 610 (Bankr. S.D. Ga. 2017)

The Debtor's "tardy" disclosure still is not complete today.  In stating that:

*"Prestige Builders of NW GA, Inc. (PB) wired a prepetition retainer of $25,000 to Debtor's counsel. PB is not a creditor of Debtor, but rather has been supporting Debtor's owner Lindsay Evans while he is unable to work"* (See First Amended and Restated Disclosure of Compensation of Attorney for Debtor (Dkt. No. 28)),  **the Debtor still has not acknowledged or disclosed that Prestige Builders of NW GA, Inc. is (as admitted in deposition) a significant creditor of Evans (the principal of the Debtor).**

15

This Court (the Honorable W. Homer Drake) has been unequivocal in the requirements of the Debtor in this regard:

> When applying to serve as counsel to debtor, it is responsibility of debtor and counsel to fully disclose all relationships with debtor, related entities, creditors, and any other parties in interest. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A.

Matter of Atlanta Sporting Club, 137 B.R. 550 (Bankr. N.D. Ga. 1991)

> Supplemented disclosure statement filed by Chapter 11 debtor's counsel, which still did not disclose extent of counsel's representation of other related entities or details concerning funds paid to counsel by debtors, was inadequate, warranting disqualification; counsel was experienced in bankruptcy and aware of extent of its representation of other related entities. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A

Matter of Atlanta Sporting Club, 137 B.R. 550 (Bankr. N.D. Ga. 1991)

> When attorney fails to disclose relationships and facts necessary for court to make determination as to whether attorney meets requirements of Bankruptcy Code, three explanations may be inferred: oversight or negligence, failure to understand importance of proper disclosure, or intent to circumvent Code. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A.

Matter of Atlanta Sporting Club, 137 B.R. 550 (Bankr. N.D. Ga. 1991)

This Creditor respectfully suggests that failing to timely disclose the source of retainer funds was completely consistent with the subsequent unauthorized "advance" for insurance by Bagley's entity, and then the even more inappropriate reimbursement for the "advance" out of this Creditor's "cash collateral" – all done without Court permission, not in the "ordinary course of business", and specifically authorized by attorney Slomka.   Bagley – the payor of the retainer fee – was obviously running this case, not the Debtor.

In light of the foregoing facts, Busch Slipakoff fails both prongs of the Eleventh Circuit's <u>Waterfall Village</u> test and should therefore be disqualified from any representation of the Debtor and denied compensation from the estate. The actions of Bagley sanctioned by Busch Slipakoff plainly constitute a "specifically identifiable impropriety" (i.e., an actual conflict of interest) and give rise to a well founded likelihood of public suspicion or appearance of impropriety.

WHEREFORE, Sargent respectfully requests that the Court enter an Order:

A.  denying Debtor's Application to Employ Busch Slipakoff and Howard Slomka as counsel to the Debtor for any period;

B.  denying Busch Slipakoff's Fee Application in its entirety;

C.  requiring Busch Slipakoff to turn over to the Chapter 11 Trustee all of the remaining funds held by Busch Slipakoff as a retainer in the Bankruptcy Case from whatever source; and

D.  granting such other and further relief as is just and proper.

Respectfully submitted this 10th day of February, 2020.

SMITH CONERLY LLP

*/s/* J. Nevin Smith
J. Nevin Smith (GA Bar No. 661110)
402 Newnan Street
Carrollton, Georgia 30117
(770) 834-1160 (telephone)
jsmith@smithconerly.com

MANN & WOOLDRIDGE LLC

*/s/ R. Brian Wooldridge*
 (GA Bar No. 775981)
P.O. Box 310
Newnan, Georgia 30264
(770) 253-2222 (telephone)
bwool@mwklaw.org

COUNSEL FOR SARGENT

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| TALLAPOOSA RENEWABLE | ) | |
| GREEN ENERGY, INC., | ) | Case No. 19-12150-WHD |
| | ) | |
| Debtor. | ) | |
| | ) | |

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the date indicated below a true and correct copy of the foregoing Creditor's Objection to: (A) Debtor's Application For Authority to Employ Howard P. Slomka and Busch, Slipakoff, Mills and Slomka, LLC As Bankruptcy Counsel For Debtor, and (B) Busch, Slipakoff, Mills and Slomka, LLC's Application For Compensation For Chapter 11 Legal Fees Due to Debtor's Attorney, was served via the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and accompanying link to the pleading to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program:

Jonathan S. Adams, jonathan.s.adams@usdoj.gov

Office of the U.S. Trustee, ustpregion21.at.ecf@usdoj.gov

Leslie M. Pineyro, lpineyro@joneswalden.com

Howard P. Slomka, se@myatllaw.com, myecfcalendar@gmail.com, myatllaw@gmail.com info@myatllaw.com notices@nextchapterbk.com, SlomkaTR74878@notify.bestcase.com, eisenlawfirm@gmail.com

J. Nevin Smith, awilson@smithconerly.com, jsmith@smithconerly.com, R40523@notify.bestcase.com

David S. Weidenbaum, david.s.weidenbaum@usdoj.gov

R. Brian Wooldridge, bwool@mwklaw.org, mwklaw@mwklaw.org, acrawford@mwklaw.org

This 10th day of February, 2020.

SMITH CONERLY LLP

*/s/* J. Nevin Smith
J. Nevin Smith (GA Bar No. 661110)
402 Newnan Street
Carrollton, Georgia 30117
(770) 834-1160 (telephone)
jsmith@smithconerly.com

MANN & WOOLDRIDGE LLC

*/s/ R. Brian Wooldridge*
(GA Bar No. 775981)
P.O. Box 310
Newnan, Georgia 30264
(770) 253-2222 (telephone)
bwool@mwklaw.org

COUNSEL FOR SARGENT