

**IT IS ORDERED as set forth below:**

**Date:  June 16, 2020**

_____

**W. Homer Drake**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| TALLAPOOSA RENEWABLE | ) | |
| GREEN ENERGY, INC., an Alabama corporation | ) | Case No. 19-12150-WHD |
| | ) | |
| Debtor. | ) | |

**ORDER APPROVING SETTLEMENT AND COMPROMISE**

THIS MATTER came before the Court on June 10, 2020 at 10:10 a.m. (the "Hearing") on

the *Motion Pursuant To 11 U.S.C. §§ 105, 305, 362, 554 and 1112 and Rules 4001, 6007 and 9019*

*of The Federal Rules of Bankruptcy Procedure Approving Settlement and Compromise, Modifying*

*the Automatic Stay, Approving the Abandonment of Property of the Estate and Dismissing the*

*Bankruptcy Case with Prejudice (Upon Filing of the Dismissal Request Notice)* **(**Doc. No. 114)

(the "Motion[1]") filed by Leslie M. Pineyro, Chapter 11 Trustee ("Trustee") for the bankruptcy estate of Tallapoosa Renewable Green Energy, Inc. ("Debtor"). At the Hearing, no party appeared in opposition to the Motion.

The Court, having read and considered the Motion and all other matters of record, including the lack of objection thereto, finds that good cause exists to grant the relief requested in the Motion.

Accordingly, it is hereby **ORDERED** that:

1. **Settlement.**

   a. The Settlement contemplated by the Settlement Agreement[2] is approved,

   b. Trustee is authorized to enter in to the Settlement Agreement and make the distributions contemplated therein.

   c. The parties may take such other and further action and execute such documents as necessary to effectuate the terms of the Settlement Agreement.

2. **Real Property and Rents**

   a. Upon entry of this Order, the Real Property and the Rents are deemed abandoned pursuant to 11 U.S.C. § 554(a) and no longer property of the Bankruptcy Estate and the Trustee is hereby released and discharged from all duties and responsibilities to collect Rent, manage or maintain the Real Property, or any proceeds of the same, including with respect to insurance, taxes, certifications or leases whether Debtor is tenant or landlord.

   b. Upon entry of this Order, the automatic stay of 11 U.S.C. § 362 is modified pursuant to 11 U.S.C. § 362 (d) to permit Sargent to exercise his contractual remedies under

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to the same in the Motion.

[2] A true and correct copy of the Settlement Agreement is attached as Exhibit "A" to this Order.

the Sargent Loan Documents regarding the Real Property and Rents and his remedies provided by state law, including Foreclosure.

3. **Allowed Claims and Distributions:**

   a. Sargent and Trustee may object to Filed Claims and Scheduled Claims within 30 day of the Effective Date of the Settlement Agreement (the "Claim Objection Deadline") by filing a claim objection on the docket in the Bankruptcy Case. Any Filed Claim and Scheduled Claim to which a claim objection is not timely and properly filed shall be deemed an Allowed Claim in (i) the amount scheduled, if no proof of claim was timely filed and the claim was not scheduled as unliquidated, disputed or contingent, or (ii) the amount of the filed proof of claim, if a timely proof of claim was filed. Pursuant to the Bar Order (Doc. No 55), if a Scheduled Claim was scheduled as unliquidated, disputed and contingent, and no proof of claim was filed, such Scheduled Claim shall be disallowed in its entirety and shall not be an Allowed Claim.

   b. The Bar Order shall continue in full force and effect upon entry of this Order.

   c. Except as otherwise provided in the Settlement Agreement, no distributions will be made with respect to any portion of a Filed Claim or Scheduled Claim unless and until any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

   d. On and after the Effective Date, Sargent shall have the non-exclusive authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims that Sargent files subject to Bankruptcy Court approval.

e.  On the Effective Date, Trustee is authorized to distribute the Sargent Cash Distribution subject to a reserve of (i) $30,000.00 for administrative expenses to winddown the Debtor's estate (ii) $10,000.00 for UST quarterly fees and (iii) the amount of Filed Claims and Scheduled Claims other than Claims filed or made by Sargent (collectively the "Estate Reserve").  Trustee will disburse to Sargent, as the balance, if any, which is due on the Sargent Cash Distribution the remainder of the Estate Reserve after (i) the payment of the final applications for Trustee and Trustee's professionals, (ii) payment of all United States Trustee fees and (iii) payment of the amount of all Allowed Claims, other than claims made or filed by Sargent, including payment of the allowed amount of any disputed Claim based on the entry of a final order resolving any timely filed claim objection.

f.  Trustee may disburse payment for Allowed Claims, other than claims made or filed by Sargent, upon the expiration of the Claim Objection Deadline for any Filed Claim or Scheduled Claim for which no objection is timely filed and upon entry of a final non-appealable order resolving any Claim Objection regarding an Allowed Claim for which a Claim Objection is timely filed.

g.  Unless specifically provided herein, in no event shall a Filed Claim or Scheduled Claim be an Allowed Claim for an amount greater than the amount of the Filed Claim or Scheduled Claim as of the Bar Date.

h.  The Bagley Prepetition Loan shall be an Allowed Claim in the amount of $25,000.00 as of the Effective Date of the Settlement Agreement.

   i. The Sargent Filed Claims (i.e. Proof of Claims 6 and 7) (the "Sargent Filed Claims") shall be Allowed Claims as of the Effective Date of the Settlement Agreement.

4. **Dismissal**

  a. Upon fling of the Dismissal Notice Request the Court will enter an order dismissing this case pursuant to 11 U.S.C. § 305(a) and 11 U.S.C. § 109(g) provide that this Court shall retain jurisdiction:

   i. To remedy any defect or omission or reconcile any inconsistency in the Settlement Agreement, as may be necessary to carry out the intent and purpose of the Settlement Agreement;

   ii. To construe or interpret any provisions in the Settlement Agreement and to issue such orders as may be necessary for the implementation, execution and consummation of the Settlement Agreement;

   iii. To determine any controversies, actions or disputes that may arise under the provisions of the Settlement Agreement, or the rights, duties or obligations of any Person under the provisions of this Settlement Agreement.

5. **Order Effective Immediately**.

  a. The requirement of Bankruptcy Rule 4001(3) are hereby waived and the terms of this Order shall be immediately effective and enforceable and shall not be stayed pursuant to Rule 4001(1) of the Federal Rules of Bankruptcy Procedure or by any other stays or injunctions provided by the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, or other applicable law.

    b.   The requirements of Bankruptcy Rule 6007 (a) are hereby waived and the terms of this Order shall be immediately effective and enforceable and shall not be stayed pursuant to Rule 6007 (a) of the Federal Rules of Bankruptcy Procedure or by any other stays or injunctions provided by the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, or other applicable law; and it is further

6.   The parties are authorized to take any and all actions necessary to accomplish the intent of this Order, and Trustee, Debtor and Sargent will cooperate in and take any reasonably necessary actions necessary to accomplish the intent of this Order; and

7.   This Court shall retain jurisdiction to enforce and interpret this Order.

**[End of Order]**

**Prepared and presented by:**
JONES & WALDEN, LLC
*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
699 Piedmont Avenue, NE
Atlanta, GA 30308
(404) 564-9300 Telephone
(404) 564-9301 Facsimile
lpineyro@joneswalden.com
*Counsel for Trustee*

**CONSENTED TO BY:**

**SMITH CONERLY LLP**

*/s/ J. Nevin Smith*
J. Nevin Smith (by Leslie M. Pineyro with
permission)
Georgia Bar No. 661110
Counsel to R. Richard Sargent
SMITH CONERLY LLP
402 Newnan Street
Carrollton, Georgia 30117
770-834-1160

6

**MANN & WOOLDRIDGE LLC**

*/s/ R. Brian Wooldridge*
R. Brian Wooldridge (by Leslie M. Pineyro
with permission)
Georgia Bar No. 775981
Counsel to R. Richard Sargent
MANN & WOOLDRIDGE P.C.
P.O. Box 310
Newnan, Georgia 30264
(770) 253-2222

**SLIPAKOFF & SLOMKA, PC**

*/s/ Howard P. Slomka*
Howard P. Slomka (by Leslie M. Pineyro
with permission)
Georgia Bar No. 652875
Counsel to Evans Parties, as Defined in
Settlement Agreement
Slipakoff & Slomka, PC
Suite 2100
3350 Riverwood Parkway
Atlanta, GA 30339
(404) 800-4001

**Distribution List:**

Leslie M. Pineyro, Jones & Walden, LLC, 699 Piedmont Avenue, N.E., Atlanta, Georgia 30308

Jonathan Adams, Esq. Office of the United States Trustee, Suite 362, Richard B. Russell
Building, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303

Howard P. Slomka, Slipakoff & Slomka, PC, Suite 2100, 3350 Riverwood Parkway, Atlanta, GA
30339

J. Nevin Smith, SMITH CONERLY LLP, 402 Newnan Street, Carrollton, Georgia 30117

R. Brian Wooldridge, MANN & WOOLDRIDGE P.C., P.O. Box 310, Newnan, Georgia 30264

Lindsay D. Evans, 4451 Alabama Road, Rome, Georgia 30165

# Exhibit "A"

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Settlement Agreement") is made and entered into as of the ___ day of May, 2020 (the "Execution Date") by and between Leslie M. Pineyro, chapter 11 trustee ("Trustee") of the bankruptcy estate of Tallapoosa Renewable Green Energy, Inc., an Alabama  corporation (the "Debtor"), the following affiliates of the Debtor, Lindsey D. Evans ("Evans"), Soymet 101, LLC, a Georgia limited liability company, Soymet Energy, LLC, a Georgia limited liability company, Soymet, LLC, a Georgia limited liability company, LDE Pride LLC, a Georgia limited liability company, DYO Lighting LLC, a Georgia limited liability company, PROSKID, LLC, a Georgia limited liability company and BLDL Properties LLC, a Georgia limited liability company (each being referred to herein as a "Non-Debtor Judgment Defendant" and which are referred to collectively herein as the "Non-Debtor Judgment Defendants", and the Debtor's and the Non-Debtor Judgment Defendants' respective past and present officers, directors, shareholders, representatives, employees, servicers, agents, attorneys, affiliates, and asset managers, specifically including without limitation, Tallapoosa Renewable Green Energy, Inc., a Georgia corporation formed by Evans on February 20, 2020 ("TRGE Georgia"), Harris Lee Bagley, Jr. ("Bagley") and B&E Holding and Investments, LLC, a Georgia limited liability company ("B&E"), and any and all entities which Bagley has owned, or in which Bagley has held a controlling interest (being collectively referred to as the "Evans Parties"), and R. RICHARD SARGENT ("Sargent"), his representatives, employees, servicers, agents, attorneys, affiliates, asset managers, heirs, administrators, personal representatives, successors and assigns (collectively, the "Sargent Parties") (the Evans Parties and the Sargent Parties are referred to in this Settlement Agreement, as the "Parties").

## RECITALS

WHEREAS, Debtor owns an industrial warehouse property in Tallapoosa, Georgia on approximately 18.4 acres of land known as 264 Stoffel Drive, Tallapoosa, Haralson County, Georgia which is more particularly described on Exhibit "A" attached hereto and incorporated herein by this reference (the "Property");

WHEREAS, Sargent holds a first priority lien against the Property securing the indebtedness evidenced by that certain promissory note in the original principal amount of $922,240.32, dated October 17, 2018 (the "Sargent Note") between Debtor, as maker, and Greater Community Bank, as payee, which Sargent Note is secured by: (i) that certain Deed to Secure Debt, dated February 17, 2015, which is recorded at Deed Book 1120, Page 176 in the Office of the Clerk of the Superior Court of Haralson County, Georgia (the "Sargent DSD"), and (ii) that certain Assignment of Rents, dated February 17, 2015, which is recorded at Deed Book 1120, Page 186 in the Office of the Clerk of the Superior Court of Haralson County, Georgia (the "Sargent AOR") (the Sargent Note, the Sargent DSD, the Sargent AOR, and all other collateral documents now evidencing or securing, in whole or in part, are hereinafter collectively referred to as the "Sargent Loan Documents"). The Sargent Loan Documents were assigned to Sargent as evidenced by that Transfer and Assignment, dated May 6, 2019, which is recorded in the Office of the Clerk of the Superior Court of Haralson County, Georgia at Deed Book 1230, page 70 (the "Sargent Assignment");

1

WHEREAS, Sargent previously brought an action in the Superior Court of Floyd County (the "Superior Court") styled R. Richard Sargent v. Lindsey Evans, Soymet, LLC, Soymet 101, LLC, Soymet Energy, LLC, LDE Pride LLC, DYO Lighting LLC, PROSKID, LLC, BLDL Properties LLC and Tallapoosa Renewable Green Energy, Inc., Civil Action No. 19-CV-00590-JFL001 (the "Floyd County Action");

WHEREAS, on August 15, 2019, the Superior Court entered its (i) Order on Motion to Open Default denying Defendants' request to open default and (ii) Final Default Judgment entering judgment for Sargent and against the Debtor and the Non-Debtor Judgment Defendants, jointly and severally, for $2,000,000.00 (the "Judgment") in the Floyd County Action;

WHEREAS, on August 28, 2019, the Superior Court entered an Order on Motion for Reconsideration and Request for Hearing denying such motions in the Floyd County Action;

WHEREAS, on August 30, 2019, the Debtor and the Non-Debtor Judgment Defendants filed a Notice of Appeal (the "Initial Appeal") appealing the Order of the Superior Court on their Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration in the Floyd County Action. On October 4, 2019, the Initial Appeal was docketed by the Court of Appeals of Georgia (the "Appellate Court");

WHEREAS, prior to the Petition Date, as hereinafter defined, Bagley caused Prestige Builders of N.W. GA, Inc. ("Prestige"), a corporation wholly owned by Bagley, to make a loan to the Debtor in the amount of $25,000 (the "Bagley Prepetition Loan") to enable the Debtor to pay for certain prepetition legal fees owed by the Debtor to Howard P. Slomka and Busch, Slipakoff, Mills and Slomka, LLC ("Busch Slipakoff"), and to pay Busch Slipakoff a pre-petition retainer for its engagement as proposed Bankruptcy Counsel For Debtor (the "Busch Slipakoff Payment");

WHEREAS, on October 30, 2019 (the "Petition Date"), Bagley, purportedly acting pursuant to a "Statutory Form Power of Attorney", dated May 24, 2019 (the "POA") from Evans, the sole shareholder, officer and director of the Debtor, caused Debtor to file a voluntary petition for relief (the "Petition") under Chapter 11 of Title 11 of 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code") commencing In Re: Tallapoosa Renewable Green Energy, Inc., Chapter 11 Case No. 19-12150-WHD (the "Bankruptcy Case");

WHEREAS, on January 6, 2020, the United States Trustee filed its "Application for Approval of Appointment of Chapter 11 Trustee" in the Bankruptcy Case and Trustee accepted the appointment and filed the "Acceptance of Appointment as Chapter 11 Trustee". On January 7, 2020, the Court entered an Order approving the appointment of Trustee in the Bankruptcy Case;

WHEREAS, on January 16, 2020, the Appellate Court entered its order remanding the Floyd County Action to the Superior Court as a result of Debtor filing the Bankruptcy Case a copy of which is attached hereto as Exhibit "B";

WHEREAS, on February 28, 2020, the Trustee filed a Motion to Modify Automatic Stay (With Consent) seeking modification of the automatic stay to allow the Trustee to appeal on behalf

2

of the Debtor: the Order on Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration entered by the Superior Court in the Floyd County Action;

WHEREAS, on March 2, 2020, the Bankruptcy Court entered its Consent Order Modifying Stay modifying the automatic stay in the Bankruptcy Case under 11 U.S.C. § 362(d) of the Bankruptcy Code to allow the Trustee to appeal on behalf of the Debtor the Order on Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration entered in the Superior Court Action;

WHEREAS, on March 30, 2020, the Non-Debtor Judgment Defendants together with the Trustee filed its Notice of Appeal (the "Second Appeal") on behalf of Debtor appealing the Order on Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration;

WHEREAS, after the Petition Date, Bagley caused Prestige to make a loan to the Debtor of approximately $17,000 (the "Bagley Loan") to pay the first installment of the Debtor's casualty insurance premium without seeking approval of the Bankruptcy Court for the Debtor to incur such debt;

WHEREAS, Bagley, purportedly acting on behalf of Evans under the POA, caused the Debtor to use rents constituting "cash collateral" of Sargent under the Sargent Loan Documents to be used to pay the insurance company an additional $17,000 and persuading the insurance company to repay the $17,000 Bagley Loan to Prestige without Court approval, using Sargent's "cash collateral" to do so in violation of Section 363 of the Code (the "Bagley Loan Repayment");

WHEREAS, on November 26, 2019, Bagley, purportedly acting pursuant to the POA, caused the Debtor to file an "Application For Authority to Employ Howard P. Slomka and Busch, Slipakoff, Mills and Slomka, LLC As Bankruptcy Counsel For Debtor" (the "Application to Employ");

WHEREAS, on January 17, 2020, Howard P. Slomka filed "Busch, Slipakoff, Mills and Slomka, LLC's Application For Compensation For Chapter 11 Legal Fees Due to Debtor's Attorney" (the "Busch Slipakoff Fee Application");

WHEREAS, on February 10, 2020, Sargent filed his Objection to the Application to Employ and the Slomka Fee Application (Doc. No. 67) (the "Sargent Objection"). To date, the Application to Employ and the Sargent Objection have not been heard by this Court;

WHEREAS, on February 20, 2020, Evans or someone acting on his behalf or instructions, created a Georgia corporation having an identical name to the Debtor, and being named Tallapoosa Renewable Green Energy, Inc.;

WHEREAS, the Court has entered an Order establishing March 10, 2020 as the last day to file proofs of claim in the Bankruptcy Case ("Claims Bar Date");

WHEREAS, the Parties acknowledge that the following claims have been filed (the "Filed Claims" and/or scheduled (the "Scheduled Claims") in the Bankruptcy Case:

| Holder | Priority, Secured, General Unsecured | Unliquidated, contingent, disputed, n/a | Scheduled Claim | Claim Number | Filed Claim | Estimated Allowed Claim |
|---|---|---|---|---|---|---|
| IRS | Priority | n/a | $0.00 | 1 | 2,345.00 | $2,345.00 |
| IRS | General Unsecured | n/a | $0.00 | | 4,680.00 | $4,680.00 |
| AL Dept. of Rev. | Priority | n/a | $149.17 | 2 | $237.96 | $237.96 |
| AL Dept. of Rev. | General Unsecured | n/a | $0.00 | 2 | $190.52 | $190.52 |
| Haralson Co. Tax Comm. | Secured | n/a | $61,929.00 | 3 | $26,759.67 | $26,759.67 |
| CT Corp. | General Unsecured | n/a | $0.00 | 4 | $405.00 | $405.00 |
| Levenson & Associates | General Unsecured | n/a | $0.00 | 5 | $6,661.48 | $6,661.48 |
| R. Richard Sargent | Secured | n/a | $0.00 | 6 | $982,775.48 | $982,775.48 |
| R. Richard Sargent | Secured | n/a | $0.00 | 7 | $2,033,990.12 | $2,033,990.12 |
| Robinson Enterprises, Inc. | General Unsecured | n/a | $0.00 | 8 | $11,995.49 | $11,995.49 |
| City of Tallapoosa | Priority | n/a | $7,474.37 | n/a | n/a | $7,474.37 |
| GA Dept. of Rev. | General Unsecured | n/a | $0.00 | n/a | n/a | $0.00 |
| Georgia Power | General Unsecured | n/a | $712.84 | n/a | n/a | $712.84 |
| Haralson Termite and Pest | General Unsecured | n/a | $284.00 | n/a | n/a | $284.00 |
| Nichols Cauley & Assoc. | General Unsecured | n/a | $541.25 | n/a | n/a | $541.25 |
| Norfolk Southern | General Unsecured | n/a | $2,111.59 | n/a | n/a | $2,111.59 |
| Norfolk Southern | General Unsecured | n/a | $2,111.59 | n/a | n/a | $2,111.59 |

| Holder | Priority, Secured, General Unsecured | Unliquidated, contingent, disputed, n/a | Scheduled Claim | Claim Number | Filed Claim | Estimated Allowed Claim |
|---|---|---|---|---|---|---|
| Walters Kluwer | General Unsecured | n/a | $405.00 | n/a | n/a | $405.00 |
| Wells Fargo Bank | General Unsecured | n/a | $146.67 | n/a | n/a | $146.67 |
| TOTAL | | | | | | $3,083,828.03 |

WHEREAS, prior to the Petition Date, in December, 2018 Evans had caused Rome Aviation Company, LLC, a Georgia limited liability company, an affiliate of the Evans Parties ("Rome Aviation") to sell to Bagley Equipment Leasing, LLC ("Bagley Equipment") a certain aviation facility located at 850 Russell Field, Floyd County, Georgia consisting of an aviation hangar and related facilities and equipment known as the "Tillman Hangar" (such transaction being referred to herein as the "Tillman Hangar Transfer");

WHEREAS, Sargent contends that Rome Aviation, and therefore Evans, did not receive reasonably equivalent value in exchange for the Tillman Hangar Transfer and was insolvent at the time of the Tillman Hangar Transfer or became insolvent as a result thereof and, therefore, the Tillman Hangar Transfer constitutes a fraudulent or voidable transfer under 11 U.S.C. § 548 and O.C.G.A. § 18-2-70 *et seq.;*

WHEREAS, prior to the Petition Date in May, 2019, Evans had caused LDE Pride, LLC, a Georgia limited liability company and an affiliate of the Evans Parties ("LDE Pride") to sell to Bagley Equipment a certain commercial property located at 5650 Alabama Highway, Rome, Floyd County, Georgia comprising approximately 10.78 acres and having situated thereon certain valuable improvements consisting of a self service gas station, including buildings, fixtures and equipment (such transaction being referred to herein as the "Gas Station Transfer");

WHEREAS, Sargent contends that LDE Pride, and therefore Evans, did not receive reasonably equivalent value in exchange for the Gas Station Transfer and was insolvent at the time of the Gas Station Transfer or became insolvent as a result thereof and, therefore, the Gas Station Transfer constitutes a fraudulent or voidable transfer under 11 U.S.C. § 548 and O.C.G.A. § 18-2-70 *et seq.;*

WHEREAS, the Parties have agreed to fully and finally compromise and settle their claims and disputes in accordance with this Settlement Agreement; and

WHEREAS, the Trustee will request the Bankruptcy Court's approval of the terms of this Settlement Agreement pursuant to the Trustee's "Motion Pursuant to 11 U.S.C. §§ 105, 305, 362, 554 and 1112 and Rules 4001, 6007 and 9019 of the Federal Rules of Bankruptcy Procedure for Entry of an Order Approving Settlement and Compromise, Modifying the Automatic Stay, Abandoning Property of the Estate and Dismissing Bankruptcy Case" (the "Approval Motion") filed contemporaneously herewith in the Bankruptcy Case.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Settlement Agreement, the payment of Ten and No/100 Dollars ($10.00) from each of the Parties to the other, the receipt and sufficiency of which are hereby acknowledged by each of the Parties, the Parties hereby represent, covenant and agree, as the case may be, as follows:

1.  **Recitals**.  The foregoing recitals are confirmed by the Parties as true and correct and are incorporated herein by reference.  The recitals are a substantive, contractual part of this Settlement Agreement and shall survive its execution.

2.  **Acknowledgement of Ownership, Validity and Enforceability of Sargent Loan Documents and Judgment.**

a.  Debtor and Evans acknowledge and agree that, as of the Petition Date, they jointly and severally owed to Sargent the amount reflected in the Sargent Bankruptcy Proof of Claim, and specifically being Claim 6-1 on the Clams Register of the Debtor's bankruptcy case, pursuant to the Sargent Loan Documents.

b.  Debtor acknowledges that Greater Community Bank assigned the Sargent Loan Documents to Sargent and that Sargent is the holder of the Sargent Loan Documents with all rights of "Lender" thereunder.

c.  There exists no breach, default or event of default by Greater Community Bank  or by Sargent under the Sargent Loan Documents, or any event or condition that, with notice or passage of time, or both, would constitute a breach, default or event of default by Greater Community Bank or Sargent under the Sargent Loan Documents.

d.  The Debtor and Evans hereby acknowledge and agree that the Sargent Loan Documents constitute and shall continue to constitute valid and legally binding obligations of each of the Debtor and Evans and are, and shall continue to be, enforceable against each of Evans and Debtor in accordance with their respective terms.  Neither this Settlement Agreement, the entry of an order granting the Approval Motion, nor any other agreement reached between and among the Evans Parties and the Sargent Parties shall be deemed or construed to be a cure of any existing default or any other default or event of default under any of the Sargent Loan Documents or a modification, amendment, extension, satisfaction, release, departure, or waiver of any of the Sargent Loan Documents or any of  Sargent's rights, remedies, or powers thereunder,  at law or in equity, except as expressly set forth in this Settlement Agreement.

e.  The Debtor and Evans hereby acknowledge and agree that all cash proceeds of rents or other charges previously or hereafter received by the Trustee from any tenant of the Property (collectively, "Rents"), or any Rents received by Sargent from any source, constitute and shall continue to constitute "cash collateral" subject to Sargent's perfected first priority security interest pursuant to the Sargent AOR and the other Sargent Loan Documents.

f.  The execution, delivery and performance of this Settlement Agreement by Sargent and the acceptance by Sargent of performance of the Debtor or Evans hereunder: (a) shall not constitute a waiver or release by Sargent of any default by Debtor or Evans that hereafter exists under the Sargent Loan Documents, (b) shall not constitute a novation of the Sargent Loan Documents and (c) except as expressly provided in this Settlement Agreement, shall be without prejudice to, and is not a waiver or release of, Sargent's rights at any time in the future to exercise any and all rights conferred upon Sargent by the Sargent Loan Documents, or otherwise at law or in equity, including, but not limited to, the right to institute to completion nonjudicial foreclosure proceedings, by and through credit bidding of the outstanding debt(s) owed under both the Sargent Note and the Judgment, against all or any portion of the Property ("Foreclosure").

g.  The Debtor and each of the Non-Debtor Judgment Defendants hereby acknowledge and agree that (i) the Judgment constitutes and shall continue to constitute a valid and legally binding obligation of the Debtor and each of the Non-Debtor Judgment Defendants, (ii) and shall continue to be, enforceable against the Debtor and each of the Non-Debtor Judgment Defendants jointly and severally.

h.  The Debtor and each of the Non-Debtor Judgment Defendants hereby acknowledge and agree that they jointly and severally owe Sargent, as of the Petition Date, the amount which is reflected in the Sargent Bankruptcy Proof of Claim, and specifically being Claim 7-1 on the Claims Register of the Debtor's bankruptcy case.

i.  Debtor agrees to the allowance of the Proofs of Claim filed by Sargent in the Bankruptcy Case (as amended, the "Proofs of Claim") and waives any right to challenge or contest the allowance of such Proof of Claim;

j.  Sargent acknowledges receipt of monthly post-petition interest payments from the Debtor's bankruptcy estate in the amount of $9,066.26 each commencing in the month of January 2020 and continuing monthly thereafter.

3.  **Dismissal of Second Appeal.**  The Trustee, the Debtor and each of the Non-Debtor Judgment Defendants shall, upon the Effective Date of this Settlement Agreement, cause their counsel to immediately file any pleadings necessary to withdraw and dismiss with prejudice the Second Appeal.

4.  **Release of Bagley Claims.**    Each of the Sargent Parties does hereby remise, release, acquit, waive, satisfy, and forever discharge Bagley and the Evans Parties, and each of them, from any and all manner of claims accountings, controversies, liabilities, expenses, damages, judgments, executions, objections, setoffs, actions, claims, demands, and causes of action of any nature whatsoever, whether at law or in equity by reason of the following matters ***ONLY***:

a.  the Tillman Hangar Transfer, including without limitation any claim pursuant to the Uniform Voidable Transactions Act, O.C.G.A. § 18-2-70, *et. seq.* in order to set aside such transfers;

b.   the Gas Station Transfer, including without limitation any claim pursuant to the Uniform Voidable Transactions Act, O.C.G.A. § 18-2-70, *et. seq.* in order to set aside such transfers;

c.   the Bagley Loan Repayment.

5.      **Modification of Automatic Stay, Abandonment of Property and Rents, and Sargent Cash Distribution.**  The Debtor and Sargent hereby consent to (A) the modification of the automatic stay in the Bankruptcy Case to allow Sargent to exercise his rights under the Sargent Loan Documents and state law, including foreclosure, (B) the abandonment by the Trustee of any interest in the Property and the Rents, (C) the distribution to Sargent on account of his claims of all remaining funds held by the Trustee, free and clear of any claim of the Trustee or any other party in interest in the Bankruptcy Case, after payment of: (i) all administrative claims, including without limitation, the fees and expenses of the Trustee, the Trustee's legal fees and expenses, and all quarterly fees of the United States Trustee, and (ii) all Filed Claims and Scheduled Claims which are Allowed Claims other than Claims filed or made by Sargent (collectively, the "Sargent Cash Distribution").  From and on the Effective Date, (i) the abandonment of the Property and Rents will remove the Property and Rents from the Bankruptcy Estate; (ii) Trustee shall be released and discharged of any responsibility to collect Rent, manage or maintain the Property, or any proceeds of the same, including with respect to insurance, taxes, certification or leases whether Debtor is tenant or landlord and (iii) Sargent will hold Trustee harmless regarding the same.

Sargent or the Trustee shall be entitled to object to Filed Claims and Scheduled Claims within 30 days of the Effective Date of this Agreement (the "Claim Objection Deadline") by filing a claim objection on the docket in the Bankruptcy Case. Any Filed Claim or Scheduled Claim to which a Claim Objection is not filed by the Claim Objection Deadline shall be deemed an Allowed Claim in (i) the amount scheduled, if no proof of claim was timely filed and the claim was not scheduled as unliquidated, disputed or contingent, or (ii) in the amount of the filed proof of claim, if a timely proof of claim was filed. Pursuant to the Bar Order, if a Scheduled Claim was scheduled as unliquidated, disputed and contingent, and no proof of claim was filed, such Scheduled Claim shall be disallowed in its entirety and shall not be an Allowed Claim.  Except as otherwise provided in this Settlement Agreement, no distributions will be made with respect to any portion of a Filed Claim or Scheduled Claim unless and until any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court. On and after the Effective Date, Sargent shall have the non-exclusive authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims that Sargent files subject to Bankruptcy Court approval.  On the Effective Date, Trustee is authorized to distribute the Sargent Cash Distribution subject to a reserve of (i) $30,000.00 for administrative expenses to winddown the Debtor's estate (ii) $10,000.00 for UST quarterly fees and (iii) the amount of Filed Claims and Scheduled Claims other than Claims filed or made by Sargent (collectively the "Estate Reserve").  Trustee will disburse the balance of the Estate Reserve after (i) the payment of the final applications for Trustee and Trustee's professionals, (ii) payment of all United States Trustee fees and (iii) payment of the amount of all Allowed Claims, including payment of the allowed amount of any disputed Claim based on the entry of a final order resolving any timely filed claim objection to Sargent as the balance, if any, which is due on the Sargent Cash Distribution.  Trustee may disburse payment for Allowed Claims upon the expiration of the Claim Objection Deadline for any Filed Claim or Scheduled Claim for which no

8

objection is timely filed and upon entry of a final non-appealable order resolving any Claim Objection regarding an Allowed Claim for which a Claim Objection is timely filed.

Any uncollected post-petition Rents shall continue to constitute the "cash collateral" of Sargent, and to the extent the Trustee has not collected all Rents lawfully due as of the Effective Date (as subsequently defined herein), said Rents shall remain the cash collateral of Sargent subject to the terms of the Interim Cash Collateral Order (Doc. No 48 ).  Trustee will continue to collect the Rents until the Effective Date, subject to use in accordance with the Interim Cash Collateral Order. Commencing on the Effective Date, the Rents shall be collectible by Sargent along with any claim held by the Debtor as Landlord pursuant to the leases with the Debtor's tenants including Xtreme Recycling LLC and Robinson Enterprise Inc.

In the Approval Motion, Trustee will request the Court to dismiss the Bankruptcy Case upon notice signed by Trustee and approved as to form by Debtor, Sargent and the United States Trustee that (i) the Property has been abandoned pursuant to the Approval Order and is therefore no longer property of the Bankruptcy Estate, (ii) the Allowed Claims have been paid in full, (iii) the Sargent Cash Distribution has been paid to Sargent, (iv) the Appeal has been dismissed pursuant to this Agreement, and (v) all professional fees, trustee fees and the US Trustee Quarterly Fees have been paid in full.

6. **Satisfaction of Sargent's Claims upon Receipt of Sargent Cash Distribution, and Completion of Foreclosure.** Upon payment of the Sargent Cash Distribution and the completion of the Foreclosure pursuant to the Sargent Loan Documents, Sargent shall seek no deficiency or other claims related to the transactions and occurrence described herein against the Debtor, the Evans Parties, the Trustee or the Debtor's bankruptcy estate.

7. **Repayment of Bagley Prepetition Loan.** The Parties acknowledge the validity of the Bagley Prepetition Loan and acknowledge that such loan remains a prepetition claim against Debtor which was not filed prior to the Claims Bar Date established by the Bankruptcy Court. Sargent consents to the payment of the Bagley Prepetition Loan in the amount of $25,000.00, free and clear of any claim of Sargent, from the monies which would otherwise constitute a portion of the Sargent Cash Distribution.  The Bagley Prepetition Loan shall be an Allowed Claim.

8. **Withdrawal of Application to Employ and Busch Slipakoff Fee Application; Waiver of Claim for Recovery of Busch Slipakoff Payment or the Busch Slipakoff Loan Repayment.** Evans shall cause Busch Slipakoff to withdraw the Application to Employ and the Busch Slipakoff Fee Application. The Parties acknowledge that Busch Slipakoff has acted as counsel to Evans, an equity holder in the Debtor. Sargent and the Trustee shall waive and forever disclaim any interest in, or to recover any portion of the Busch Slipakoff Payment (i.e. the $25,000.00 retainer) or the Busch Slipakoff Loan Repayment, and agree that neither shall seek recovery thereof as property of the estate in the Bankruptcy Case under any theory of recovery.

9

9.      **The Bankruptcy Motion.**

a.   Contemporaneously with the execution of this Agreement, Trustee will file a motion with the Bankruptcy Court in the Bankruptcy Case pursuant to 11 U.S.C. §§ 105, 305, 362, 554 and 1112 and Federal Rules of Bankruptcy Procedure 4001, 6007 and 9019 in the form attached hereto as Exhibit "C" (the "Approval Motion").

10.     **Effectiveness.**

a.   This Settlement Agreement is not effective until signed by all Parties hereto (the "Execution Date") and an order which is substantially in the form attached to the Approval Order is entered by the Bankruptcy Court granting the Approval Motion (the "Approval Order").

b.   The "Effective Date" of this Settlement Agreement is the date that is one (1) business day after the Approval Order becomes final and non-appealable.

11.     **Assignment of Rail Spur Lease**.  On the Effective Date, the Trustee and Debtor shall assign to Sargent, or his assign, without recourse, all of the Trustee's and the Debtor's rights under and to that certain Lease Agreement, dated October 7, 2010, between Debtor and Norfolk Southern Railway Company, a Virginia corporation provided that Trustee is not representing or warranting that the said lease can be assigned or is in good standing.

12.     **Removal of Equipment and Personal Property**. The Parties agree that all containers, tanks, equipment or other personal property (the "Soymet Personal Property") located on the Effective Date within the boundaries of the area delineated as 3.061 Acres on the drawing attached hereto as Exhibit "D" (the "Designated Removal Area") is and shall remain the sole and exclusive property of Soymet Energy, LLC, a Georgia limited liability company ("Soymet Energy").  Soymet Energy, or its agents, employees, contractors or representatives may, at their sole cost and expense at any time after the Execution Date, and prior to September 30, 2020 (the "Removal Date"), remove any Soymet Personal Property as they may elect, from the Designated Removal Area (the "Removal Activities"), such Removal Activities to be performed in accordance with all applicable federal, state and local laws, statutes, rules and regulations. The Removal Activities shall be performed solely within the Designated Removal Area and ingress and egress to and from the Designated Removal Area shall be solely contained within the Designated Removal Area.  In the event that any of the Removal Activities have not been completed before the Removal Date, Sargent may, by written notice to Soymet Energy in accordance with this Settlement Agreement, elect any of the following remedies:

(i)    extend the Removal Date for such period as Sargent shall deem appropriate for Soymet Energy, or its agents, employees, contractors or representatives, to complete the Removal Activities; or

10

(ii)    declare any Soymet Personal Property remaining on the Property (the "Abandoned Property") abandoned by Soymet and no Evans Party shall have any further interest in such Abandoned Property.  Soymet Energy grants to the Sargent Parties, and each of them a limited power of attorney coupled with an interest to execute on behalf of Soymet Energy any bill of sale, transfer. assignment, or other instrument or document necessary or desirable to effect, document or confirm the abandonment and transfer of the Abandoned Property in accordance with this subparagraph.

13.     **General Covenants.**

a.  Through and including the Effective Date:

   i.  The Evans Parties shall not cause or permit any liens, other than the Sargent Loan Documents to be placed upon the Property;

   ii. The Evans Parties shall not take, or cause Debtor to take, any action to transfer, sell, dispose of, or convey any real or personal property comprising the Property.

14.     **Default.**

a.  Each of the following shall, at the option of Sargent, constitute an "Event of Default" under this Settlement Agreement:

   i.  Sargent discovers that any representation or warranty made herein by any of the Evans Parties is materially untrue or incorrect;

   ii. Any Evans Party breaches or defaults in performance of any covenant or agreement contained in this Settlement Agreement and fails to cure said breach or default within ten (10) days after written notice from Sargent;

   iii.  Any Evans Party takes any action to prevent, impede, delay or otherwise frustrate Sargent's exercise of its rights under the Sargent Loan Documents, or state law, with respect to the Property or the Rents;

   iv. The filing of any lien greater than $10,000 against all or any portion of the Property that is superior to the lien of the Sargent DSD or the Sargent AOL, as the case may be, that is not removed or bonded by Evans within thirty (30) days of Debtor or Evans receiving notice that such lien was filed;

   v.  Any payment or value received under this Settlement Agreement or towards amounts owed or previously owed under the Sargent Loan Documents is required to be disgorged by Sargent pursuant to an order of any court or any Debtor or Trustee seeks to have Sargent disgorge any such payment;

   vi. The Effective Date has not occurred prior to July 1, 2020.

b.   Upon the occurrence of an Event of Default, Sargent may terminate this Agreement and may take any steps in the Bankruptcy Case to protect Sargent's rights as a creditor. If the Effective Date does not occur prior to July 1, 2020, any party may terminate this Agreement.

15.   **Releases.**

a.   Effective as of the Effective Date, the Evans Parties hereby release, acquit, and forever discharge the Sargent Parties, and their respective past and present affiliates, parents, officers, directors, shareholders, partners, agents, employees, attorneys, heirs, assigns, representatives, predecessors, and successors (the "Sargent Released Parties") from any and all causes of action, claims, suits, damages, judgments, liens, and demands whatsoever in law and/or equity, contract, tort or otherwise that one or more of the Evans Parties had, now have, or may later have or claim to have against any of the Sargent Released Parties, whether known or unknown, asserted or unasserted, now accrued or that may accrue hereafter, arising out of or relating to facts or transactions that existed, occurred, happened, arose, or transpired at any time from the beginning of time to the Effective Date of this Settlement Agreement. The Evans Parties covenant not to sue the Sargent Released Parties for any matters released in this Settlement Agreement. Nothing herein is intended or shall be construed as releasing Sargent from any obligations arising under this Settlement Agreement.

b.   Upon payment of the Sargent Cash Distribution and the completion of the Foreclosure of the Property pursuant to the Sargent Loan Documents, Sargent agrees that he will seek no deficiency against the Debtor or the Evans Parties and, effective as of the Effective Date and provided that no uncured Event of Default on the part of any Evans Party exists under this Settlement Agreement, Sargent shall release the Debtor and the Evans Parties from any and all claims, causes of action, suits, damages, judgments, liens, and demands whatsoever in law and/or equity, contract, tort, or otherwise that Sargent had, has or allegedly has, whether known or unknown, asserted or unasserted, against  the Debtor and Evans arising from the Sargent Loan Documents, the Judgment, the Tillman Hangar Transfer, the Gas Station Transfer, the Bagley Loan, the Bagley Prepetition Loan, and/or the Bankruptcy Case.  Nothing herein is intended or shall be construed as releasing any Evans Party from any obligations arising under this Settlement Agreement.

c.   Effective as of the Effective Date, Trustee and Trustee's current and/or post-Filing Date and pre-Effective Date employees, advisors, attorneys, representatives, financial advisors, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any holder of any claim or interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the filing of the Bankruptcy Case, the negotiation and filing of the Settlement Agreement, or the administration of the Settlement Agreement, or the property to be distributed under this Settlement Agreement, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Settlement Agreement. No holder of any claim or interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the

12

parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the administration of this Settlement Agreement or the Property to be distributed under this Settlement Agreement.

16.    **Representations and Warranties.**    The Parties hereby make the following representations and warranties, and acknowledge that these and all other representations and warranties contained herein are material to this Settlement Agreement and shall survive the signing of this Settlement Agreement and receipt of benefits hereunder:

a.    The Parties are fully competent to and have the power, authority, and legal right to execute this Settlement Agreement and to bind themselves to the promises, covenants, terms, and conditions set forth herein and to perform their respective obligations hereunder subject to the Bankruptcy Court's approval.

b.    Evans is the Manager and sole member of each of the Non-Debtor Judgment Defendants and TRGE Georgia, and has the power, authority, and legal right to execute this Settlement Agreement on behalf of each of the Non-Debtor Judgment Defendants and TRGE Georgia, and to bind such entities to the promises, covenants, terms, and conditions set forth herein.

c.    Evans and Bagley are the sole Managers and sole members of B&E, and have the power, authority, and legal right to execute this Settlement Agreement on behalf of B&E, and to bind such entity to the promises, covenants, terms, and conditions set forth herein.

d.    Each of the Evans Parties is duly formed, existing and in good standing under the laws of the State of Georgia. In the event that any of the Evans Parties shall not be existing and in good standing  prior to the Execution Date as a result of their administrative dissolution, Sargent may cause each such entity to be reinstated in the most expeditious manner available and apply the actual costs thereof as a credit against the Bagley Prepetition Loan.  Evans shall cooperate in the preparation and execution of any documents necessary or desirable to effect such reinstatement promptly on demand of Sargent or its counsel.

e.    This Settlement Agreement is not being made or entered into with the actual intent to hinder, delay or defraud any entity or person.

f.    The execution of this Settlement Agreement by each of the Evans Parties and the performance by each of the Evans Parties of their respective obligations hereunder will not violate or result in a breach or constitute a default under any agreement to which it is a party.

g.    The Parties represent and warrant that no rights, demands, claims, damages, losses, costs, expenses, actions, or causes of action whatsoever that they had, now have, or may later claim to have or have had, on account of, arising out of, or in any way relating to the Parties' relationship or their disputes have been assigned, conveyed, or transferred to any individual or entity.

h.    The Parties acknowledge and represent that this Settlement Agreement has been reviewed by their respective counsel.

The representations and warranties of the Parties in this Settlement Agreement shall survive the termination of this Settlement Agreement.

13

17.     **Attorneys' Fees and Expenses.** The Parties shall bear their own attorneys' fees and expenses in connection with the Bankruptcy Case, the Judgment and negotiation of, and performance under, this Settlement Agreement provided Trustee shall be entitled to seek fees and expenses for Trustee and its professionals as provided by the Bankruptcy Code.   If any Party files an action for a breach of this Settlement Agreement, the prevailing party or parties will be entitled to recover all reasonable, actual attorneys' fees and expenses incurred in prosecuting or defending that action.

18.     **Governing Law.**   This Settlement Agreement, including its interpretation and enforcement, will be governed by the law of the State of Georgia.

19.     **Jurisdiction**.  If any Party files an action for breach of this Settlement Agreement, the other Parties agree to submit to the jurisdiction of the Bankruptcy Court.

21.     **Strict Compliance.**   The failure of any Party at any time or times to demand strict performance by the other Parties of any of the terms, covenants, or conditions set forth herein shall not be construed as a continuing waiver or relinquishment thereof.  Any Party may, at any time, demand strict and complete performance by the other Parties of the terms, covenants, and conditions of this Settlement Agreement.

23.     **Notices**.

  (a)     All notices and other communications required or permitted under this Settlement Agreement shall be sent via hand delivery or overnight commercial courier as follows:

          To Debtor:

          Tallapoosa Renewable Green Energy, Inc.

          _____
          _____
          _____

          <u>To the Non-Debtor Judgment Defendants:</u>
          4451 Alabama Road
          Rome, Georgia 30165
          Attention:  Lindsey D. Evans

<u>With a copy to</u>:

Christopher P. Twyman, Esq.
Cox, Byington, Twyman & Johnson, LLP
711 Broad Street
Rome, Georgia 30161

<u>To Bagley</u>:

Harris Lee Bagley, Jr.
932 North Second Avenue
Rome, Georgia 30165

<u>To Sargent Parties</u>:

R. Richard Sargent
P.O. Box 1086
Rome, Georgia 30162

<u>With a copy to</u>:

J. Nevin Smith, Esq.
Smith Conerly LLP
402 Newnan Street
Carrollton, Georgia 30117

and

R. Brian Wooldridge, Esq.
Mann & Wooldridge P.C.
PO Box 310
Newnan, Georgia 30264

and

Jack Harris, Esq.
205 Sherwood Road
Rome, Georgia 30165

<u>To Trustee</u>:

Leslie M. Pineyro, Esq.
Jones and Walden, LLC
699 Piedmont Avenue, NE
Atlanta, Georgia 30308

15

With a copy to:

Leon Jones, Esq.
Jones and Walden, LLC
699 Piedmont Avenue, NE
Atlanta, Georgia 30308

(b)      Notice shall be deemed effective when received.

24.      **Drafting**.      This Settlement Agreement was negotiated and drafted with full participation of the Parties and their respective counsel.  In the event that it is determined that any ambiguity exists in this Settlement Agreement, any such ambiguity shall not be resolved or otherwise construed against any particular Party, but rather shall be resolved by a fair reading of the intent of the Parties as established herein.

25.      **Successors and Assigns.**      The Parties agree that the terms, covenants, and obligations set forth herein shall inure to the benefit of and be binding upon each of their respective agents, attorneys, employees, representatives, administrators, executors, successors, and assigns.

26.      **Headings**.  The headings herein have been used to designate the various sections of this Settlement Agreement and are solely for convenience and ease of reference and shall not be construed in any event or manner as interpretative of this Settlement Agreement.

27.      **Modification**.  This Settlement Agreement shall not be amended, altered, revised, modified, terminated, or changed, except by further written Settlement Agreement by all of the Parties.

28.      **Severance**.  If any provision of this Settlement Agreement is found to be contrary to law or void, the remainder of the Settlement Agreement shall be considered valid and enforceable and shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

29.      **Multiple Counterparts.**  This Settlement Agreement may be signed in multiple counterparts, each of which will be deemed an original and all of which taken together will constitute one instrument binding upon the Parties, notwithstanding that each Party is not a signatory to the same counterpart. Any scanned PDF counterparts or facsimile counterparts shall be considered originals.

30.      **Entire Settlement Agreement.**  The Parties agree that this Settlement Agreement, along with all Exhibits hereto, sets forth the entire Settlement Agreement of the Parties in relation to its subject matter and that no prior oral or written matters extrinsic to this Settlement Agreement shall have any force or effect.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Parties hereto have set their hands and seals as of the Execution Date set forth above.

**DEBTOR:**

**TALLAPOOSA RENEWABLE GREEN
ENERGY, INC.,**
**an Alabama  corporation**

By: _____
Name: Lindsey D. Evans
Title:   President

**NON –DEBTOR DEFENDANTS:**

_____(SEAL)
**LINDSEY D. EVANS**

**SOYMET ENERGY, LLC,**
**a Georgia limited liability company**

By: _____
Name: Lindsey D. Evans
Title:   Manager

**SOYMET 101, LLC,**
**a Georgia limited liability company**

By: _____
Name: Lindsey D. Evans
Title:   Manager

**SOYMET, LLC,**
**a Georgia limited liability company**

By: _____
Name: Lindsey D. Evans
Title:   Manager

**LDE PRIDE, LLC,**
**a Georgia limited liability company**

By: _____

Name: Lindsey D. Evans
Title:   Manager

**DYO LIGHTING, LLC,**
**a Georgia limited liability company**

By: _____

Name: Lindsey D. Evans
Title:   Manager

**PROSKID, LLC,**
**a Georgia limited liability company**

By: _____

Name: Lindsey D. Evans
Title:   Manager

**BLDL PROPERTIES, LLC,**
**a Georgia limited liability company**

By: _____

Name: Lindsey D. Evans
Title:   Manager

**TRGE GA:**

**TALLAPOOSA RENEWABLE GREEN ENERGY, INC.,**
**a Georgia corporation**

By: _____

Name: Lindsey D. Evans
Title:   President

**B&E HOLDING AND INVESTMENTS, LLC,**
**a Georgia limited liability company**

By: _____
Name: Lindsey D. Evans
Title:  Manager

By: _____
Name: Harris Lee Bagley, Jr.
Title:  Manager

**BAGLEY:**

_____(SEAL)
**HARRIS LEE BAGLEY, JR.**

**SARGENT:**

_____(SEAL)
 **R. RICHARD SARGENT**

**TRUSTEE:**

_____(SEAL)
**Leslie Pineyro, Trustee of the Bankruptcy Estate**
**of Tallapoosa Renewable Green Energy, Inc.**
**an Alabama Corporation**

**B&E HOLDING AND INVESTMENTS, LLC,**
a Georgia limited liability company

By: _____
Name: Lindsey D. Evans
Title:  Manager

By: _____
Name: Harris Lee Bagley, Jr.
Title:  Manager

**BAGLEY:**

_____ (SEAL)
HARRIS LEE BAGLEY, JR.

**SARGENT:**

_____ (SEAL)
**R. RICHARD SARGENT**

**TRUSTEE:**

_____ (SEAL)
Leslie **Pineyro, Trustee of the Bankruptcy Estate
of Tallapoosa Renewable Green Energy, Inc.
an Alabama Corporation**

EXHIBIT "A"

DESCRIPTION OF PROPERTY

TRACT I

All that tract or parcel of land lying and being in Land Lots 103 and 130, 8th District and 5th Section, City of Tallapoosa, Haralson County, Georgia, and more fully described as follows to-wit:

To find the point of beginning, start at the point where the southwesterly right of way line of Southern Railroad (said Southern Railroad having a 200 foot right of way) intersects the northerly line of Stoffel Drive (said drive having an 80 foot right of way): thence North 34 degrees, 07 minutes, 00 seconds West along the right of way of Southern Railroad a distance of 847.91 feet to the property of United Trucking, Inc., (a plat of which appears at Plat Book 6, Page 43, Haralson County Deed records), and the point of beginning; thence from the point of beginning, South 34 degrees, 07 minutes, 0 seconds East, 847.91 feet to the right of way of Stoffel Drive: thence in a westerly direction along the northerly right of way line of Stoffel Drive (said right of way line being the property line) the following courses and distances: South 52 degrees, 18 minutes, 32 seconds West, 21.25 feet: South 60 degrees, 41 minutes, 24 seconds West, 44.05 feet: South 67 degrees, 32 minutes, 51 seconds West, 44.37 feet: South 74 degrees, 47 minutes, 57 seconds West, 45.51 feet: South 82 degrees, 42 minutes, 45 seconds West, 44.61 feet: South 88 degrees, 37 minutes, 33 seconds West, 45.49 feet: North 84 degrees, 22 minutes, 31 seconds West, 44.99 feet: North 77 degrees, 04 minutes, 25 seconds West, 44.92 feet: North 73 degrees, 58 minutes, 29 seconds West, 79.30 feet: North 69 degrees, 37 minutes, 40 seconds West, 372.60 feet: North 77 degrees, 39 minutes, 58 seconds West, 81.88 feet: North 80 degrees, 28 minutes, 49 seconds West, 51.41 feet: North 82 degrees, 58 minutes, 17 seconds West, 53.83 feet: North 86 degrees, 08 minutes, 17 seconds West, 20.05 feet: thence away from said Stoffel Drive, North 00 degrees, 31 minutes, 13 seconds West, 250.50 feet: thence North 55 degrees, 50 minutes, 0 seconds East, and along a portion of property of United Trucking, Inc., 573.85 feet to the point of beginning.

Said property being designated as Tract 1-A, containing 1.57 acres; Tract 1-B containing 2.95 acres; Tract 2, containing 1.18 acres; Tract 3, containing 1.35 acres and Tract 4 containing 2.35 acres according to a plat by David E. Rowell, dated March 13, 1984, said tracts containing a total of 9.40 acres.

TRACT II

All that tract or parcel of land lying and being in land Lots 103 and 130, 8th District and 5th Section, City of Tallapoosa, Haralson County, Georgia, and more fully described as follows, to-wit:

To find the point of beginning, commence at the intersection of the westerly right of way line of Southern Railroad and the northerly right of way line of Stoffel Road (said roadway being paved and having a width of 80 feet): run thence North 33 degrees, 36 minutes, 47 seconds West, and along the westerly right of way line of Southern Railroad,

A distance of 847.91 feet to a railroad spike and the point of beginning; from said point of beginning, run thence South 56 degrees, 21 minutes, 13 seconds West, 348.19 feet to an iron pin: run thence North 34 degrees, 28 minutes, 27 seconds West, 400.04 feet to an iron pin: run thence North 29 degrees, 59 minutes, 35 seconds West, 308.39 feet to an iron pin: run thence South 82 degrees, 20 minutes, 03 seconds West, 119.90 feet to an iron pin: run thence North 13 degrees, 14 minutes, 04 seconds East, 107.48 feet to a point marked by a pine tree; run thence North 57 degrees, 43 minutes,

30 seconds West, 130.0 feet to a point marked by a 30 inch Oak: run thence North 19 degrees, 59 minutes, 10 seconds East, 282.00 feet to an iron pin: run thence North 86 degrees, 17 minutes, 33 seconds West, 145.0 feet to a point on the easterly right of way line of Watson Street: run thence North 12 degrees, 54 minutes, 35 seconds East, and along the easterly right of way line of Watson Street, 130.22 feet to the intersection of said right of way line with the westerly right of way line of Southern Railroad; run thence in a southeasterly and southerly direction, and along the westerly right of way line of Southern Railroad, the following courses and distances, to-wit: South 65 degrees, 29 minutes, 01 seconds East, 43.30 feet: South 62 degrees, 19 minutes, 12 seconds East, 93.50 feet: South 58 degrees, 09 minutes, 02 seconds East, 93.01 feet: and South 54 degrees, 10 minutes, 52 seconds East, 29.05 feet: run thence South 23 degrees, 51 minutes, 36 seconds West, 187.20 feet to an iron pin: run thence South 66 degrees, 08 minutes, 24 seconds East, 100.0 feet to an iron pin: run thence North 23 degrees, 51 minutes, 36 seconds East, 162.50 feet to a point on the westerly right of way of Southern Railroad, run thence in a southerly and southwesterly direction, and along the westerly right of way line of Southern Railroad the following courses and distances, to-wit: South 50 degrees, 06 minutes, 38 seconds East, 53.91 feet: South 46 degrees, 09 minutes, 40 seconds East, 93.10 feet: South 45 degrees, 05 minutes, 36 seconds East, 34.92 feet: South 41 degrees, 01 minute, 03 seconds East, 91.80 feet: South 37 degrees, 19 minutes, 03 seconds East, 85.60 feet: South 34 degrees, 19 minutes, 03 seconds East, 86.30 feet: South 33 degrees, 35 minutes, 47 seconds East, 529.70 feet to a railroad spike and the point of beginning.

Said tract of land consisting of an aggregate of three parcels of land, measuring 3.23 acres as shown on a plat recorded at Plat Book 6, Page 43, Clerk's Office, Haralson Superior Court; 2.6 acres as shown on a plat recorded at Plat Book 11, Page 134, said records; and 2.74 records; and 2.74 acres as shown on a plat recorded at Plat Book 11, Page 134, said records; all of said plats being hereby incorporated by reference for a more full and complete description of the subject property.

TRACT III

All that tract or parcel of land lying and being in Land Lot 130 of the 8th District and 5th Section, Haralson County, Georgia, and being more particularly described as follows, to-wit:

To find the point of beginning, commence at the common intersection between the easterly right of way Watson Street (said road having a 60 foot right of way) and the northerly right of way of Stoffel Drive (said road having a 80 foot right of way), and from said point, run thence in an easterly direction and along the northerly right of way of said

Stoffel Drive the following courses and distances: North 74 degrees, 32 minutes, 12 seconds East, 50.20 feet to a point: North 77 degrees, 28 minutes, 28 seconds East, 102.63 feet to a point: North 82 degrees, 20 minutes, 54 seconds East, 103.15 feet to a point: and North 86 degrees, 50 minutes, 20 seconds East, 85.93 feet to an iron pin and the point of beginning; from said point of beginning, run thence North 52 degrees, 08 minutes, 41 seconds West, 47.82 feet to a point: run thence North 52 degrees, 42 minutes, 54 seconds East, 105.88 feet to a point: run thence North 35 degrees, 36 minutes, 19 seconds East, 153.13 feet to an iron pin: run thence South 0 degrees, 00 minutes, 00 seconds West, 221.56 feet to an iron pin located on the northerly right of way of said Stoffel Drive: run thence North 87 degrees, 49 minutes, 09 seconds West, 118.62 feet to a point: run thence South 86 degrees, 50 minutes, 20 seconds West, 17.13 feet to an iron pin and the point of beginning.

Said tract is more fully described as 18,651 square feet on a survey entitled "Plat for U.S. Can Company" by David E. Rowell, Haralson County Surveyor, dated February 16, 2000. Said survey and description contained being incorporated for a more completed description.

<u>EXHIBIT "B"</u>

<u>COPY OF REMAND ORDER FROM COURT OF APPEALS</u>

# Court of Appeals
# of the State of Georgia

ATLANTA,_____

*The Court of Appeals hereby passes the following order:*

**A20A0520. EVANS, et al. v. SARGENT.**

On December 6, 2019, Plaintiff/Appellee filed a Suggestion of Bankruptcy, noting that Appellant Tallapoosa Renewable Green Energy, Inc. has filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Georgia. It appears from this filing that this appeal is subject to the automatic bankruptcy stay.

The appellate courts of this State are constitutionally required to dispose of every case at the term of court for which it is entered on the courts' dockets for hearing or at the next term of court; thus, this Court does not have the power to stay a case. See 1983 Ga. Const., Art. VI, Sec. IX, Para. II; *Boardman v. Brenninkmeijer*, 328 Ga. App. 882 (763 SE2d 267) (2014). Accordingly, we REMAND this case to the trial court to enter a stay pending the resolution of Tallapoosa Renewable Green Energy, Inc.'s bankruptcy proceedings. Upon the resolution of the bankruptcy proceedings or the bankruptcy court's lifting of the automatic stay, Defendants may re-institute the appeal by filing a new notice of appeal in the trial court within thirty days of the date of the entry of the order. See *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598, 598-600 (1) (417 SE2d 386) (1992).

January 16, 2020

*Court of Appeals of the State of Georgia*
*C l e r k ' s O f f i c e ,*
*Atlanta,_____*
*I certify that the above is a true extract from*
*the minutes of the Court of Appeals of Georgia.*
*Witness my signature and the seal of said court*
*hereto affixed the day and year last above written.*
*, Clerk.*
*01/16/2020*

EXHIBIT "C"
COPY OF APPROVAL MOTION
(With Exhibits)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

IN RE:                                    )         CHAPTER 11
                                          )
TALLAPOOSA RENEWABLE GREEN                )         CASE NO. 19-12150-WHD
ENERGY, INC., an Alabama corporation      )
                                          )
                                          )
DEBTOR.                                   )

### NOTICE OF HEARING

 **PLEASE TAKE NOTICE** that on May 19, 2020, that Leslie M. Pineyro, Chapter 11 Trustee ("Trustee") filed a ***Motion Pursuant To 11 U.S.C. §§ 105, 305, 362, 554 and 1112 and Rules 4001, 6007 and 9019 of The Federal Rules of Bankruptcy Procedure for Entry of an Order Approving Settlement and Compromise, Modifying the Automatic Stay, Authorizing Abandonment of Property of the Estate and Dismissing Bankruptcy Case With Prejudice*** in the above-styled bankruptcy case (the "Approval Motion").

 **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Approval Motion in the **2nd Floor Courtroom, Lewis R. Morgan Federal Building, 18 Greenville St, Newnan, Georgia, at 10:10 a.m. on June 10, 2020.** *Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website (http://www.ganb.uscourts.gov/) prior to the hearing for instructions on whether to appear in person or by phone.*

 Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U.S. Bankruptcy Court, 18 Greenville St, Newnan, Georgia 30264. You must also mail a copy of your response to the undersigned at the address stated below.

 

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date.  Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

This 19th day of May, 2020

**JONES & WALDEN, LLC**

*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300 Telephone
(404) 564-9301 Facsimile
Attorneys for Trustee

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| TALLAPOOSA RENEWABLE | ) | |
| GREEN ENERGY, INC., an Alabama corporation | ) | Case No. 19-12150-WHD |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**<u>TRUSTEE'S MOTION PURSUANT TO 11 U.S.C. §§ 105, 305, 362, 554 AND 1112 AND
RULES 4001, 6007 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AND
COMPROMISE, MODIFYING THE AUTOMATIC STAY, APPROVING THE
ABANDONMENT OF PROPERTY OF THE ESTATE AND DISMISSING
BANKRUPTCY CASE WITH PREJUDICE</u>**

COMES NOW, Leslie M. Pineyro ("Trustee" or "Movant"), Chapter 11 Trustee for

Tallapoosa Renewable Green Energy, Inc., an Alabama corporation ("Debtor"), and files this

motion (the "Motion"), pursuant to Sections 105 (a), 305(a), 362(d), 554(a) and 1112(b) of the

Bankruptcy Code and Rules 4001, 6007 and 9019 of the Federal Rules of Bankruptcy Procedure,

for entry of an order: (1) approving a settlement and compromise between Debtor, creditor R.

Richard Sargent ("Sargent") and certain non-debtor entities, including certain releases and

indemnities, (2) modifying the automatic stay to allow Sargent to exercise his rights under the

Sargent Loan Documents, as hereinafter defined, including foreclosure of all or any portion of

the real property which is described on Exhibit "A" attached hereto and incorporated herein by

this reference (the "Real Property") and collection of post-petition rents from the Real Property

("Rents"), (3) approving the abandonment of the Real Property and the Rents, (4) approving

releases between Trustee, the Debtor,  Sargent, and certain non-debtor parties, and (5)

establishing a Claim Objection Deadline and providing for the distribution of estate funds for

Allowed Claims and (6) dismissing this bankruptcy case upon the filing of the Dismissal Request

Notice.  In support of the Motion, Trustee shows the Court as follows:

**Bankruptcy Case and Jurisdiction**

1.       On October 30, 2019 (the "Petition Date"), Harris Lee Bagley ("Bagley"),

purportedly acting pursuant to a "Statutory Form Power of Attorney", dated May 24, 2019 (the

"POA") from Lindsey D. Evans, the sole shareholder, officer and director of the Debtor

("Evans"), caused Debtor to file a voluntary petition for relief (the "Petition") under Chapter 11

of Title 11 of 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code") commencing this bankruptcy

case (the "Bankruptcy Case").

2.       On January 6, 2020 ("Appointment Date"), the United States Trustee filed its

"Application for Approval of Appointment of Chapter 11 Trustee" (Doc. No. 41), and Trustee

accepted the appointment and filed the "Acceptance of Appointment as Chapter 11 Trustee"

(Doc. No. 42).  On January 7, 2020, the Court entered an Order approving such appointment

(Doc. No. 43).

3.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.

4.       Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.       This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.       The statutory predicates for this motion are Sections 105(a), 305(a), 362(d) 554(a)

and 1112(b) of the Bankruptcy Code.

## Background

### Debtor's Assets and Sargent First Priority Claim

7.      Debtor owns, as its only material tangible asset, an industrial warehouse property in Tallapoosa, Georgia on approximately 18.4 acres of land known as 264 Stoffel Drive, Tallapoosa, Haralson County, Georgia which is defined herein as the "Real Property".

8.      Sargent holds a first priority lien against the Real Property pursuant to that certain Deed to Secure Debt which is recorded at Deed Book 1120, Page 176 in the Office of the Clerk of the Superior Court of Haralson County, Georgia (the "Sargent DSD"), and against the prepetition and post-petition rents from the Real Property pursuant to that certain Assignment of Rents which is recorded at Deed Book 1120, Page 186 in the Office of the Clerk of the Superior Court of Haralson County, Georgia (the "Sargent AOR"), which Sargent DSD and Sargent AOR secure payment of a Promissory Note in the original principal amount of $922,240.32 dated October 17, 2018 (the "Sargent Note") between Debtor, as Borrower, and Greater Community Bank, as lender (the Sargent Note, the Sargent DSD, the Sargent AOR, and all other collateral documents now evidencing or securing, in whole or in part, the Sargent Note, are hereinafter collectively referred to as the "Sargent Loan Documents"). The Sargent Loan Documents were assigned to Sargent as evidenced by Transfer and Assignment, dated May 6, 2019, which is recorded in the Office of the Clerk of the Superior Court of Haralson County, Georgia at Deed Book 1230, page 70 (the "Sargent Assignment").

### The Sargent Judgment Claim

9.      Prior to the Petition Date, Sargent brought an action in Superior Court of Floyd County (the "Superior Court") styled: *R. Richard Sargent v. Lindsey D. Evans, Soymet 101, LLC, Soymet, LLC, Soymet Energy, LLC, LDE Pride LLC, DYO Lighting LLC, PROSKID, LLC, BLDL*

*Properties LLC and Tallapoosa Renewable Green Energy, Inc.,*[1] Civil Action No. 19-CV-00590-JFL001 (the "Floyd County Action") alleging various claims against the Defendants including alter ego and fraud.

10.     On August 15, 2019, the Superior Court entered its (i) *Order on Motion to Open Default* denying Defendants' request to open default and (ii) *Final Default Judgment* entering judgment for Sargent and against Defendants, jointly and severally, for $2,000,000.00 (the "Judgment") in the Floyd County Action. The Judgment bears interest at the judgment rate of interest as provided in O.C.G.A. §7-4-2. The Judgment relates to claims arising from: (a) a line of credit Soymet 101, LLC executed in favor of Synovus Bank, (b) Sargent's pledge of a $2,000,000 certificate of deposit as security for the line of credit and subsequent renewals thereof; (c) any and all claims or rights Sargent may have against any Defendant under the line of credit note that Synovus assigned to Sargent; and (d) the additional contentions and allegations of Sargent as set out in the Floyd County Action.

11.     On August 28, 2019, the Superior Court entered its *Order on Motion for Reconsideration and Request for Hearing* denying Defendants' requests in the Floyd County Action.

12.     On August 30, 2019, Defendants filed a *Notice of Appeal* (the "Initial Appeal") appealing the Order of the Superior Court on Defendants' Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration in the Floyd County Action.  On October 4, 2019, the Initial Appeal was docketed by the Court of Appeals of Georgia (the "Appellate Court").

---

[1] Lindsey D. Evans, Soymet 101, LLC, Soymet LLC, Soymet Energy, LLC, LDE Pride LLC, DYO Lighting LLC, PROSKID, LLC, and BLDL Properties LLC, are each referred to as a "Non-Debtor Defendant" and collectively the "Non-Debtor Defendants".  The Non-Debtor Defendants together with Debtor are referred to as the "Defendants".

13.     On January 16, 2020, the Appellate Court entered its order remanding the Floyd County Action to the Superior Court as a result of Debtor filing this Bankruptcy Case.

14.     On February 28, 2020, the Trustee filed a Motion to Modify Automatic Stay (With Consent) (Doc. No. 82) seeking modification of the automatic stay to allow the Trustee to appeal on behalf of the Debtor the Order on Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration entered by the Superior Court in the Floyd County Action.

15.     On March 2, 2020, the Court entered its Consent Order Modifying Stay (Doc. No. 83) modifying the automatic stay in this Case  under 11 U.S.C. § 362(d) to allow the Trustee to appeal on behalf of the Debtor the Order on Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration entered in the Superior Court Action.

16.     On March 30, 2020, the Trustee filed its *Notice of Appeal* (the "Second Appeal") on behalf of Debtor together with the Non-Debtor Defendants appealing the Order on Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration[2].

***Potential Claims Against Bagley***

17.     After the Petition Date, Bagley caused Prestige Builders of N.W. GA, Inc., ("Prestige") a corporation wholly owned by Bagley, to make a loan to the Debtor of approximately $17,000 to pay the first installment of the Debtor's casualty insurance premium without seeking approval of the Court for the Debtor to incur such debt. Upon Debtor collecting rents which constitute cash collateral of Sargent, Bagley caused a portion of such rents to be used to pay the insurance company an additional $17,000 and persuaded the insurance company to

---

[2] Non-Debtor Defendants, through separate counsel, simultaneously filed their notice of appeal appealing the Order on Motion to Open Default, the Judgment, and the Order on Motion for Reconsideration.

repay the $17,000 to Prestige without Court approval, using Sargent's cash collateral to do so in violation of Section 363 of the Code (the "Bagley Loan Repayment").

***Employment of Attorney and Attorney Fee Matters***

18.    Prior to the Petition Date, Bagley caused Prestige to make a loan to the Debtor in the amount of $25,000 (the "Bagley Prepetition Loan") to enable the Debtor to pay for certain prepetition legal fees owed by the Debtor to Howard P. Slomka and Busch, Slipakoff, Mills and Slomka, LLC ("Busch Slipakoff"), and to pay Busch Slipakoff  a pre-petition retainer for its engagement as proposed Bankruptcy Counsel For Debtor (the "Busch Slipakoff Payment");

19.    On November 26, 2019, Bagley, purportedly acting pursuant to the POA, caused the Debtor to file an "Application for Authority to Employ Howard P. Slomka and Busch, Slipakoff, Mills and Slomka, LLC as Bankruptcy Counsel for Debtor" (Doc. No. 18) (the "Application to Employ").

20.    On December 13, 2019, the United States Trustee ("UST") filed the "United States Trustee's Objection to Debtor's Application to Employ Attorney" citing numerous deficiencies and substantive hurdles in the Application to Employ, including that Busch Slipakoff is not disinterested (Doc. No. 27) (the "UST Objection").

21.    On January 17, 2020, Howard P. Slomka filed "Busch, Slipakoff, Mills and Slomka, LLC's Application for Compensation For Chapter 11 Legal Fees Due to Debtor's Attorney" (Doc. No. 60) (the "Slomka Fee Application").

22.    On February 10, 2020, Sargent filed his Objection to the Application to Employ and to the Slomka Fee Application (Doc. No. 67) (the "Sargent Objection"). To date, the Application to Employ, the Slomka Fee Application, the UST Objection and the Sargent Objection have not been heard by this Court.

23.     On January 6, 2020, the United States Trustee filed its "Application for Approval of Appointment of Chapter 11 Trustee" (Doc. No. 41), and Trustee accepted the appointment and filed the "Acceptance of Appointment as Chapter 11 Trustee" (Doc. No. 42).   On January 7, 2020, the Court entered an Order approving such appointment (Doc. No. 43).

*Claims Bar Date*

24.     On January 10, 2020, the Trustee filed its Motion to Establish Bar Date For Filing Proofs of Claim (Doc. No. 51), and on January 13, 2020, the Court entered an Order and Notice Establishing March 10, 2020 As the Deadline For Filing Proofs of Claims and Interests (Doc. No. 55) (the "Bar Order") establishing March 10, 2020 as the last day to file proofs of claim in the Bankruptcy Case.

*Filed Claims*

25.     The following claims have been filed (the "Filed Claims" and/or scheduled (the "Scheduled Claims") in the Bankruptcy Case:

| Holder | Priority, Secured, General Unsecured | Unliquidated, contingent, disputed, n/a | Scheduled Claim | Claim Number | Filed Claim | Estimated Allowed Claim |
|---|---|---|---|---|---|---|
| IRS | Priority | n/a | $0.00 | 1 | 2,345.00 | $2,345.00 |
| IRS | General Unsecured | n/a | $0.00 | | 4,680.00 | $4,680.00 |
| AL Dept. of Rev. | Priority | n/a | $149.17 | 2 | $237.96 | $237.96 |
| AL Dept. of Rev. | General Unsecured | n/a | $0.00 | 2 | $190.52 | $190.52 |
| Haralson Co. Tax Comm. | Secured | n/a | $61,929.00 | 3 | $26,759.67 | $26,759.67 |
| CT Corp. | General Unsecured | n/a | $0.00 | 4 | $405.00 | $405.00 |
| Levenson & | General Unsecured | n/a | $0.00 | 5 | $6,661.48 | $6,661.48 |

| Holder | Priority, Secured, General Unsecured | Unliquidated, contingent, disputed, n/a | Scheduled Claim | Claim Number | Filed Claim | Estimated Allowed Claim |
|---|---|---|---|---|---|---|
| Associates | | | | | | |
| R. Richard Sargent | Secured | n/a | $0.00 | 6 | $982,775.48 | $982,775.48 |
| R. Richard Sargent | Secured | n/a | $0.00 | 7 | $2,033,990.12 | $2,033,990.12 |
| Robinson Enterprises, Inc. | General Unsecured | n/a | $0.00 | 8 | $11,995.49 | $11,995.49 |
| City of Tallapoosa | Priority | n/a | $7,474.37 | n/a | n/a | $7,474.37 |
| GA Dept. of Rev. | General Unsecured | n/a | $0.00 | n/a | n/a | $0.00 |
| Georgia Power | General Unsecured | n/a | $712.84 | n/a | n/a | $712.84 |
| Haralson Termite and Pest | General Unsecured | n/a | $284.00 | n/a | n/a | $284.00 |
| Nichols Cauley & Assoc. | General Unsecured | n/a | $541.25 | n/a | n/a | $541.25 |
| Norfolk Southern | General Unsecured | n/a | $2,111.59 | n/a | n/a | $2,111.59 |
| Norfolk Southern | General Unsecured | n/a | $2,111.59 | n/a | n/a | $2,111.59 |
| Walters Kluwer | General Unsecured | n/a | $405.00 | n/a | n/a | $405.00 |
| Wells Fargo Bank | General Unsecured | n/a | $146.67 | n/a | n/a | $146.67 |
| TOTAL | | | | | | $3,083,828.03 |

26.     The total estimated Allowed Claims, excluding claims made or filed by Sargent, are $67,062.34.

27.     As of May 14, 2020, the Bankruptcy Estate, through the Trustee, has funds on hand of $266,144.15 with outstanding uncleared checks and/or payables of approximately $27,000.00. Professional fees, trustee fees, quarterly US Fees, insurance premiums ($5,139.64) and the

interest payment to Sargent ($9,066.26) continue to accrue.    Trustee is not aware of any other

major expenses accruing at this time.

**The Settlement Agreement**

28.    Trustee, Debtor, the Non-Debtor Defendants (including Evans), Tallapoosa

Renewable Green Energy, Inc., a Georgia corporation having the same name as the Debtor

formed by Evans on February 20, 2020 ("TRGE Georgia"), Bagley, B&E Holding and

Investments, LLC, a Georgia limited liability company owned by Evans and Bagley ("B&E")

and Sargent have entered into that certain Release and Settlement Agreement, a copy of  which

is attached hereto as Exhibit "B" and incorporated herein by reference (the "Settlement

Agreement[3]"), which settlement and compromise (the "Settlement") embodied in the Settlement

Agreement provides for, *inter alia*:  (i) the dismissal with prejudice of the Second Appeal, (ii)

modification of the automatic stay to allow Sargent to exercise his contractual remedies under

the Sargent Loan Documents and his remedies provided by state law, (iii) approval of the

abandonment by the Trustee of the estate's interest in the Real Property and the Rents, (iv) the

distribution of the Sargent Cash Distribution to Sargent, (v) the payment in full of all

administrative claims, including without limitation, the United States Trustee Fees, the Trustee's

fees and expenses and the legal fees and expenses of Trustee's legal counsel, (vi) the payment in

full of the Allowed  Claims of all priority and general unsecured creditors excluding claims filed

or made by Sargent, (vii)  the full and complete general release by Debtor and certain non-debtor

parties of all claims against Sargent and certain other parties including the Trustee, (viii)

acknowledgement of all of Debtor's obligations under the Sargent Loan Documents and the

---

[3] Capitalized terms not otherwise defined in the Motion shall have the meaning set forth in the
Settlement Agreement. The terms of the Settlement Agreement are summarized herein, but the
Settlement Agreement should be reviewed for its complete terms and shall control in the event of
any inconsistency.

validity and enforceability of the Sargent Loan Documents, (ix) waiver by Trustee, Debtor and all parties in interest of the right to file any objection to Sargent's Proofs of Claim [Claims Register; Claims No. 6 and 7], which claims will be deemed allowed upon the granting of this Motion, (x) the payment of the Bagley Prepetition Loan by Sargent out of funds which otherwise would be a portion of the Sargent Cash Distribution, and (xi) establishment of a claims allowance process. As used herein, the terms "Sargent Cash Distribution" shall mean all remaining funds held by the Trustee, free and clear of any claim of the Trustee or any other party in interest in the Bankruptcy Case, after payment of: (i) all administrative claims, including without limitation, the fees and expenses of the Trustee, the Trustee's legal fees and expenses, and all quarterly fees of the United States Trustee, and (ii) all Filed Claims and Scheduled Claims which are Allowed Claims other than Claims filed or made by Sargent.

### The Motion

29.    By this Motion, Trustee seeks: (A) approval of settlement and compromise set forth in the Settlement Agreement in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure, (B) modification of the automatic stay pursuant to § 362(d) and in accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure to allow Sargent to exercise his contractual remedies under the Sargent Loan Documents, including but not limited to non-judicial foreclosure of the Real Property, and Sargent exercising his contractual rights to collect the Rents to the extent they are not paid to the Debtor or the Trustee during the pendency of this Bankruptcy Case, and his remedies provided by state law, (C) approval of the abandonment of property of the estate by the Trustee pursuant to § 554(a) and in accordance with Rule 6007 of the Federal Rules of Bankruptcy Procedure to allow the Trustee to abandon its interest in the Real Property and Rents as burdensome to the Debtor's estate, or as of

inconsequential value and benefit to the Debtor's estate, (D) approval of the payments and disbursements as set out in the Settlement Agreement, (E) approval of certain releases and indemnities between the parties, (F) dismissal of the Bankruptcy Case pursuant to § 305(a) of the Bankruptcy Code, with prejudice, or, alternatively, dismissal of the Bankruptcy Case pursuant to §1112(b) of the Bankruptcy Code, with prejudice, in either instance, upon filing of the Dismissal Request Notice, and (G) establishing a claims allowance process.

### Settlement and Compromise

30.    The Trustee believes that the Settlement Agreement was negotiated by the Debtor (subject to Court approval) and Sargent in good faith.

31.    The Trustee believes that the compromise and settlement effected by the Settlement Agreement is in the best interests of the estate and creditors since it will satisfy all of the Allowed Claims against the Debtor and the Debtor's estate.

### Modification of Automatic Stay

32.    Trustee, Debtor, Sargent and the Non-Debtor Defendants (the "Parties") have agreed that cause exists to modify the automatic stay to allow Sargent to exercise his contractual remedies under the Sargent Loan Documents and his remedies provided by state law regarding the Real Property and Rents.

33.    The Parties have agreed that cause exists to modify the automatic stay to allow the foregoing matters to proceed under 11 U.S.C. § 362(d).  Stay relief will serve the fair and efficient administration of justice.

34.    Trustee further requests that the Court's Order modifying the stay on this Motion be excepted from the 14-day stay of Bankruptcy Rule 4001(a)(3).

## Abandonment of Property of the Estate

35.     The Parties have agreed that, upon the Court modifying the automatic stay to allow Sargent to exercise his rights under the Sargent Loan Documents and state law in accordance with this Motion, cause will exist for the Trustee to abandon the Real Property and the Rents pursuant to § 554(a) and in accordance with Rule 6007 of the Federal Rules of Bankruptcy Procedure as burdensome to the Debtor's estate, or as of inconsequential value and benefit to the Debtor's estate.

36.     Trustee further requests that the Court's Order approving the abandonment of the Real Property and the Rents on this Motion (i) be excepted from the 14-day stay of Bankruptcy Rule 6007(a) and (ii) release and discharge the Trustee from all duties and responsibilities to collect Rent, manage or maintain the Real Property, or any proceeds of the same, including with respect to insurance, taxes, certifications or leases whether Debtor is tenant or landlord.

## Allowed Claims and Distributions

37.     Trustee requests the Court approve the claims allowance and distribution process set forth in the Proposed Order, which generally provides for the establishment of a Claims Objection Deadline and process for the allowance of Filed Claims and Scheduled Claim, payment of the Sargent Cash Distribution, subject to the Estate Reserve, and payment of Allowed Claims excluding the claims made or filed by Sargent or Bagley, which will be paid from the Sargent Cash Distribution.

## Dismissal of Bankruptcy Case

38.     By the Motion, the Trustee also seeks dismissal of the Bankruptcy Case with prejudice pursuant to 11 U.S.C. § 305 (a) upon notice (the "Dismissal Request Notice") signed by Trustee and approved as to form by Debtor, Sargent and the United States Trustee that (i) the

Real Property and Rents have been abandoned pursuant to the Approval Order and is therefore

no longer property of the Bankruptcy Estate, (ii) the Allowed Claims have been paid in full, (iii)

the Sargent Cash Distribution has been paid to Sargent, (iv) the Appeal has been dismissed

pursuant to this Agreement, and (v) all professional fees, trustee fees and the US Trustee

Quarterly Fees have been paid in full. The Trustee believes that the interests of creditors and the

Debtor would be better served by such dismissal since the compromise and settlement set forth

in the Settlement Agreement will satisfy all of the Allowed Claims against the Debtor's estate.

Alternatively, the Trustee seeks dismissal of the Bankruptcy Case with prejudice pursuant to 11

U.S.C. § 1112 (b) for the reasons stated above.

### **Proposed Order**

39.     Trustee submits herewith as Exhibit "B" a proposed order granting Trustee's

Motion and requests the Court grant all such relief requested therein.

### **Prayer For Relief**

WHEREFORE, Trustee prays that the Court enter an order:

(i)      approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, the

settlement and compromise set forth in the Settlement Agreement and authorizing

Trustee and the parties to the Settlement Agreement to take such actions and

executing such documents as necessary and reasonable to effectuate the terms of the

same;

(ii)     lifting and modifying the automatic stay pursuant to 11 U.S.C. § 362(d) to permit

Sargent to exercise his contractual remedies under the Sargent Loan Documents and

state law against the Real Property, including Foreclosure, and the Rents;

(iii)    exercising the Court's discretion under Bankruptcy Rule 4001(a) (3) to order that the

§362 Order not be stayed and take effect immediately upon entry;

(iv)    approving the abandonment by the Trustee of the Real Property and the Rents pursuant to 11 U.S.C. § 554(a) and under Bankruptcy Rule 6007(a);

(v)    exercising the Court's discretion under Bankruptcy Rule 6007(a) to order that the §554 Order not be stayed and take effect immediately upon entry;

(vi)    dismissing this Bankruptcy Case with prejudice pursuant to 11 U.S.C. § 305(a), or alternatively, dismissing this Bankruptcy Case with prejudice pursuant to 11 U.S.C. § 1112(b) upon the fling of the Dismissal Request Notice, retaining jurisdiction in the Bankruptcy Court:

    a.    To remedy any defect or omission or reconcile any inconsistency in this Settlement Agreement, as may be necessary to carry out the intent and purpose of the Settlement Agreement;

    b.    To construe or interpret any provisions in the Settlement Agreement and to issue such orders as may be necessary for the implementation, execution and consummation of the Settlement Agreement;

    c.    To determine any controversies, actions or disputes that may arise under the provisions of this Settlement Agreement, or the rights, duties or obligations of any Person under the provisions of this Settlement Agreement.

(vii)    Approving the procedures for determining Allowed Claims and the Claim Objection Deadline;

(viii)    Authorizing the payments by the Trustee contemplated by the Settlement Agreement including regarding the Allowed Claims, Sargent Cash

Distributions and the Estate Reserve;

(ix)    Granting all relief set forth in the Proposed Order attached hereto as Exhibit

"B"

(x)    granting such other and further relief as is just and proper.

Dated this 19th day of May, 2020.

[SIGNATURES ON FOLLOWING PAGE]

Respectfully submitted this 19th day of May, 2020

**JONES & WALDEN, LLC**

*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300 Telephone
(404) 564-9301 Facsimile
Attorney for Trustee

**CONSENTED TO BY:**

**SMITH CONERLY LLP**

*/s/ J. Nevin Smith*
J. Nevin Smith (by Leslie M. Pineyro with permission)
Georgia Bar No. 661110
Counsel to R. Richard Sargent
SMITH CONERLY LLP
402 Newnan Street
Carrollton, Georgia 30117
770-834-1160

**MANN & WOOLDRIDGE LLC**

*/s/ R. Brian Wooldridge*
R. Brian Wooldridge (by Leslie M. Pineyro with permission)
Georgia Bar No. 775981
Counsel to R. Richard Sargent
MANN & WOOLDRIDGE P.C.
P.O. Box 310
Newnan, Georgia 30264
(770) 253-2222

**SLIPAKOFF & SLOMKA, PC**

*/s/ Howard P. Slomka*
Howard P. Slomka (by Leslie M. Pineyro with permission)
Georgia Bar No. 652875
Counsel to Evans Parties, as Defined in Settlement Agreement
Slipakoff & Slomka, PC
Suite 2100
3350 Riverwood Parkway
Atlanta, GA 30339
(404) 800-4001

**EXHIBIT "A"**
DESCRIPTION OF REAL PROPERTY

TRACT I

All that tract or parcel of land lying and being in Land Lots 103 and 130, 8th District and 5th Section, City of Tallapoosa, Haralson County, Georgia, and more fully described as follows to-wit:

To find the point of beginning, start at the point where the southwesterly right of way line of Southern Railroad (said Southern Railroad having a 200 foot right of way) intersects the northerly line of Stoffel Drive (said drive having an 80 foot right of way): thence North 34 degrees, 07 minutes, 00 seconds West along the right of way of Southern Railroad a distance of 847.91 feet to the property of United Trucking, Inc., (a plat of which appears at Plat Book 6, Page 43, Haralson County Deed records), and the point of beginning; thence from the point of beginning, South 34 degrees, 07 minutes, 0 seconds East, 847.91 feet to the right of way of Stoffel Drive: thence in a westerly direction along the northerly right of way line of Stoffel Drive (said right of way line being the property line) the following courses and distances: South 52 degrees, 18 minutes, 32 seconds West, 21.25 feet: South 60 degrees, 41 minutes, 24 seconds West, 44.05 feet: South 67 degrees, 32 minutes, 51 seconds West, 44.37 feet: South 74 degrees, 47 minutes, 57 seconds West, 45.51 feet: South 82 degrees, 42 minutes, 45 seconds West, 44.61 feet: South 88 degrees,  37 minutes, 33 seconds West, 45.49 feet: North 84 degrees, 22 minutes, 31 seconds West, 44.99 feet: North 77 degrees, 04 minutes, 25 seconds West, 44.92 feet: North 73 degrees, 58 minutes, 29 seconds West, 79.30 feet: North 69 degrees, 37 minutes, 40 seconds West, 372.60 feet: North 77 degrees, 39 minutes, 58 seconds West, 81.88 feet: North 80 degrees, 28 minutes, 49 seconds West, 51.41 feet: North 82 degrees, 58 minutes, 17 seconds West, 53.83 feet: North 86 degrees, 08 minutes, 17 seconds West, 20.05 feet: thence away from said Stoffel Drive, North 00 degrees, 31 minutes, 13 seconds West, 250.50 feet: thence North 55 degrees, 50 minutes, 0 seconds East, and along a portion of property of United Trucking, Inc., 573.85 feet to the point of beginning.

Said property being designated as Tract 1-A, containing 1.57 acres; Tract 1-B containing 2.95 acres; Tract 2, containing 1.18 acres; Tract 3, containing 1.35 acres and Tract 4 containing 2.35 acres according to a plat by David E. Rowell, dated March 13, 1984, said tracts containing a total of 9.40 acres.

TRACT II

All that tract or parcel of land lying and being in land Lots 103 and 130, 8th District and 5th Section, City of Tallapoosa, Haralson County, Georgia, and more fully described as follows, to-wit:

To find the point of beginning, commence at the intersection of the westerly right of way line of Southern Railroad and the northerly right of way line of Stoffel Road (said roadway being paved and having a width of 80 feet): run thence North 33 degrees, 36 minutes, 47 seconds West, and along the westerly right of way line of Southern Railroad, a distance of 847.91 feet to a railroad spike and the point of beginning; from said point of

beginning, run thence South 56 degrees, 21 minutes, 13 seconds West, 348.19 feet to an iron pin: run thence North 34 degrees, 28 minutes, 27 seconds West, 400.04 feet to an iron pin: run thence North 29 degrees, 59 minutes, 35 seconds West, 308.39 feet to an iron pin: run thence South 82 degrees, 20 minutes, 03 seconds West, 119.90 feet to an iron pin: run thence North 13 degrees, 14 minutes, 04 seconds East, 107.48 feet to a point marked by a pine tree; run thence North 57 degrees, 43 minutes, 30 seconds West, 130.0 feet to a point marked by a 30 inch Oak: run thence North 19 degrees, 59 minutes, 10 seconds East, 282.00 feet to an iron pin: run thence North 86 degrees, 17 minutes, 33 seconds West, 145.0 feet to a point on the easterly right of way line of Watson Street: run thence North 12 degrees, 54 minutes, 35 seconds East, and along the easterly right of way line of Watson Street, 130.22 feet to the intersection of said right of way line with the westerly right of way line of Southern Railroad; run thence in a southeasterly and southerly direction, and along the westerly right of way line of Southern Railroad, the following courses and distances, to-wit: South 65 degrees, 29 minutes, 01 seconds East, 43.30 feet: South 62 degrees, 19 minutes, 12 seconds East, 93.50 feet: South 58 degrees, 09 minutes, 02 seconds East, 93.01 feet: and South 54 degrees, 10 minutes, 52 seconds East, 29.05 feet: run thence South 23 degrees, 51 minutes, 36 seconds West, 187.20 feet to an iron pin: run thence South 66 degrees, 08 minutes, 24 seconds East, 100.00 feet to an iron pin: run thence North 23 degrees, 51 minutes, 36 seconds East, 162.50 feet to a point on the westerly right of way of Southern Railroad, run thence in a southerly and southwesterly direction, and along the westerly right of way line of Southern Railroad the following courses and distances, to-wit: South 50 degrees, 06 minutes, 38 seconds East, 53.91 feet: South 46 degrees, 09 minutes, 40 seconds East, 93.10 feet: South 45 degrees, 05 minutes, 36 seconds East, 34.92 feet: South 41 degrees, 01 minute, 03 seconds East, 91.80 feet: South 37 degrees, 19 minutes, 03 seconds East, 85.60 feet: South 34 degrees, 19 minutes, 03 seconds East, 86.30 feet: South 33 degrees, 35 minutes, 47 seconds East, 529.70 feet to a railroad spike and the point of beginning.

Said tract of land consisting of an aggregate of three parcels of land, measuring 3.23 acres as shown on a plat recorded at Plat Book 6, Page 43, Clerk's Office, Haralson Superior Court; 2.6 acres as shown on a plat recorded at Plat Book 11, Page 134, said records; and 2.74 records; and 2.74 acres as shown on a plat recorded at Plat Book 11, Page 134, said records; all of said plats being hereby incorporated by reference for a more full and complete description of the subject property.

TRACT III

All that tract or parcel of land lying and being in Land Lot 130 of the 8th District and 5th Section, Haralson County, Georgia, and being more particularly described as follows, to-wit:

To find the point of beginning, commence at the common intersection between the easterly right of way Watson Street (said road having a 60 foot right of way) and the northerly right of way of Stoffel Drive (said road having a 80 foot right of way), and from said point, run thence in an easterly direction and along the northerly right of way of said

Stoffel Drive the following courses and distances: North 74 degrees, 32 minutes, 12 seconds East, 50.20 feet to a point: North 77 degrees, 28 minutes, 28 seconds East, 102.63 feet to a point: North 82 degrees, 20 minutes, 54 seconds East, 103.15 feet to a point: and North 86 degrees, 50 minutes, 20 seconds East, 85.93 feet to an iron pin and the point of beginning; from said point of beginning, run thence North 52 degrees, 08 minutes, 41 seconds West, 47.82 feet to a point: run thence North 52 degrees, 42 minutes, 54 seconds East, 105.88 feet to a point: run thence North 35 degrees, 36 minutes, 19 seconds East, 153.13 feet to an iron pin: run thence South 0 degrees, 00 minutes, 00 seconds West, 221.56 feet to an iron pin located on the northerly right of way of said Stoffel Drive: run thence North 87 degrees, 49 minutes, 09 seconds West, 118.62 feet to a point: run thence South 86 degrees, 50 minutes, 20 seconds West, 17.13 feet to an iron pin and the point of beginning.

Said tract is more fully described as 18,651 square feet on a survey entitled "Plat for U.S. Can Company" by David E. Rowell, Haralson County Surveyor, dated February 16, 2000. Said survey and description contained being incorporated for a more completed description.

**EXHIBIT "B"**

**PROPOSED ORDER**

Exhibit "A" TO PROPOSED ORDER

COPY OF SETTLEMENT AGREEMENT

EXHIBIT "D"

DRAWING OF DESIGNATED REMOVAL AREA AND REMOVAL ACESS AREA

